**Nos. 22-2636, -2630, -2632, -2633, -2634, -2635, -2637**

In the

# United States Court of Appeals

## For the Seventh Circuit

———————

LATONYA CANNON, ET AL.,

*Plaintiffs-Appellants,*

v.

AMERICAN CYANAMID COMPANY, ET AL.,

*Defendants-Appellees.*

———————

On Appeal from the United States District Court
for the Eastern District of Wisconsin
Nos. 2:07-cv-0864, 2:11-cv-0055, 2:11-cv-0425, and 2:14-cv-1423
(The Honorable Lynn Adelman)

———————

**JOINT RESPONSE BRIEF OF DEFENDANTS-APPELLEES
ARMSTRONG CONTAINERS, INC., ATLANTIC RICHFIELD
COMPANY, EIDP, INC., and THE SHERWIN-WILLIAMS COMPANY**

———————

Leon F. DeJulius, Jr.
JONES DAY
250 Vesey Street
New York, NY 10281-1047
Ph: (212) 326-3830

*Counsel for Appellee
The Sherwin-Williams Company*

Brian David Schmalzbach
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219-3916
Ph: (804) 775-1000

*Counsel for Appellee EIDP, Inc.*

(additional counsel listed inside cover)

**ORAL ARGUMENT REQUESTED**

Additional Counsel for Defendants-Appellees

Anderson T. Bailey
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
Ph: (412) 391-3939

Jeffrey K. Spoerk
Evan Thomsen
QUARLES & BRADY LLP
411 E Wisconsin Avenue, Suite 2350
Milwaukee, WI 53202
Ph: (414) 277-5000

*Counsel for Appellee*
*The Sherwin-Williams Company*

Robert P. Alpert
Jeffrey K. Douglass
Eric Larson
MORRIS, MANNING & MARTIN, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, GA 30326
Ph: (404) 233-7000

Timothy A. Bascom
BASCOM, BUDISH & CEMAN, S.C.
W193 N10975 Kleinmann Drive
Germantown, WI 53022
Ph: (414) 774-8835

*Counsel for Appellee Armstrong*
*Containers, Inc.*

Joy C. Fuhr
Eric Fleming
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219-3916
Ph: (804) 775-1000

Paul E. Benson
MICHAEL BEST & FRIEDRICH LLP
790 North Water Street, Suite 2500
Milwaukee, WI 53202
Ph: (414) 271-6560

*Counsel for Appellee EIDP, Inc.*

Sean Morris
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Ph: (213) 243-4000

Anthony S. Baish
GODFREY & KAHN, S.C.
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202-5 6 I 5
Ph : (414) 273-3500

*Counsel for Appellee Atlantic Richfield*
*Company*

i

Save As          Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>22-2628, 22-2629,</u> 22-2630, 22-2631, 22-2632, 22-2633, 22-2634, 22-2635, 22-2636, 22-2637

Short Caption: <u>Glenn Burton, Jr., et al. v. American Cyanamid Co., et al. (Consolidated Appeal)</u>

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> [ ]       **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

<u>E. I. du Pont de Nemours and Company</u>

_____

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

<u>McGuireWoods LLP, Michael Best & Friedrich LLP</u>

_____

(3)     If the party, amicus or intervenor is a corporation:

i)     Identify all its parent corporations, if any; and

<u>Corteva, Inc.</u>

_____

ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

<u>Corteva, Inc., 100%</u>

_____

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

_____

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

_____

Attorney's Signature: <u>/s/ Brian D. Schmalzbach</u>          Date: <u>9/30/2022</u>

Attorney's Printed Name: <u>Brian D. Schmalzbach</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     **Yes** [✓]     **No** [ ]

Address: <u>McGuireWoods LLP, Gateway Plaza, 800 E Canal Street, Richmond, VA 23219</u>

_____

Phone Number: <u>804.775.4746</u>          Fax Number: <u>804.698.2304</u>

E-Mail Address: <u>bschmalzbach@mcguirewoods.com</u>

rev. 12/19 AK

Save As    Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>22-2628, 22-2629,</u> 22-2630, 22-2631, 22-2632, 22-2633, 22-2634, 22-2635, 22-2636, 22-2637

Short Caption: <u>Glenn Burton, Jr., et al. v. American Cyanamid Co., et al. (Consolidated Appeal)</u>

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> [ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

<u>E. I. du Pont de Nemours and Company</u>

 

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

<u>McGuireWoods LLP, Michael Best & Friedrich LLP</u>

 

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        <u>Corteva, Inc.</u>

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        <u>Corteva, Inc., 100%</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

 

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

 

Attorney's Signature: <u>/s/ Joy C. Fuhr</u>     Date: <u>9/30/2022</u>

Attorney's Printed Name: <u>Joy C. Fuhr</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** [ ]   **No** [✓]

Address: <u>McGuireWoods LLP, Gateway Plaza, 800 E Canal Street, Richmond, VA 23219</u>

 

Phone Number: <u>804.775.4341</u>     Fax Number: <u>804.698.2056</u>

E-Mail Address: <u>jfuhr@mcguirewoods.com</u>

Save As    Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>22-2628, 22-2629</u>, 22-2630, 22-2631, 22-2632, 22-2633, 22-2634, 22-2635, 22-2636, 22-2637

Short Caption: <u>Glenn Burton, Jr., et al. v. American Cyanamid Co., et al. (Consolidated Appeal)</u>

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

   ☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>E. I. du Pont de Nemours and Company</u>

_____

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
<u>McGuireWoods LLP, Michael Best & Friedrich LLP</u>

_____

(3)     If the party, amicus or intervenor is a corporation:

   i)      Identify all its parent corporations, if any; and

         <u>Corteva, Inc.</u>

   ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

         <u>Corteva, Inc., 100%</u>

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

_____

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

_____

Attorney's Signature: <u>/s/ Eric S. Fleming</u>                    Date: <u>9/30/2022</u>

Attorney's Printed Name: <u>Eric S. Fleming</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     **Yes** ☐     **No** ☑

Address: <u>McGuireWoods LLP, Gateway Plaza, 800 E Canal Street, Richmond, VA 23219</u>

_____

Phone Number: <u>804.775.1806</u>                    Fax Number: <u>804.698.2306</u>

E-Mail Address: <u>efleming@mcguirewoods.com</u>

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>22-2628, 22-2629,</u> 22-2630, 22-2631, 22-2632, 22-2633, 22-2634, 22-2635, 22-2636, 22-2637

Short Caption: <u>Glenn Burton, Jr., et al. v. American Cyanamid Co., et al. (Consolidated Appeal)</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

        ☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)      The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

      E. I. du Pont de Nemours and Company

(2)      The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

      McGuireWoods LLP, Michael Best & Friedrich LLP

(3)      If the party, amicus or intervenor is a corporation:

      i)      Identify all its parent corporations, if any; and

            Corteva, Inc.

      ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

            Corteva, Inc., 100%

(4)      Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)      Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: <u>/s/ Paul E. Benson</u>      Date: <u>9/29/2022</u>

Attorney's Printed Name: <u>Paul E. Benson</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☐   **No** ☑

Address: <u>Michael Best & Friedrich LLP, 790 N Water Street, Suite 2500, Milwaukee, WI 53202</u>

Phone Number: <u>414.225.2757</u>      Fax Number: <u>414.277.0656</u>

E-Mail Address: <u>pebenson@michaelbest.com</u>

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>22-2628, 22-2630,</u> 22-2632, 22-2633, 22-2634, 22-2635, 22-2636, and 22-2637

Short Caption: <u>Glenn Burton, Jr., et al. v. American Cyanamid Company, et al. (consolidated)</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

        ☐      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    <u>Atlantic Richfield Company</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    <u>Arnold & Porter Kaye Scholer LLP; Godfrey & Kahn S.C.</u>

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        <u>Atlantic Richfield's parent corporation is BP America, Inc., an indirectly wholly-owned subsidiary of BP p.l.c.</u>

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        <u>BP p.l.c. is a publicly held company. No publicly-held company owns 10% or more of its stock.</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    <u>N/A</u>

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    <u>N/A</u>

Attorney's Signature: <u>/s/ Sean Morris</u>        Date: <u>October 3, 2022</u>

Attorney's Printed Name: <u>Sean Morris</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑    No ☐

Address: <u>777 South Figueroa Street, 44th Floor</u>

    <u>Los Angeles, CA 90017-5844</u>

Phone Number: <u>213-243-4000</u>    Fax Number: <u>213-243-4199</u>

E-Mail Address: <u>sean.morris@arnoldporter.com</u>

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>22-2636, 22-2630,</u> 22-2632, 22-2633, 22-2634, 22-2635, and 22-2637

Short Caption: <u>Latonya Cannon, et al. v. American Cyanamid Company, et al.</u>

 To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

 The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

  [ ]  **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

  <u>Atlantic Richfield Company</u>

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

  <u>Arnold & Porter Kaye Scholer LLP; Godfrey & Kahn S.C.</u>

(3)  If the party, amicus or intervenor is a corporation:

  i)   Identify all its parent corporations, if any; and

    <u>Atlantic Richfield's parent corporation is BP America, Inc., an indirectly wholly-owned subsidiary of BP p.l.c.</u>

  ii)   list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    <u>BP p.l.c. is a publicly held company.  No publicly-held company owns 10% or more of its stock.</u>

(4)  Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

  <u>N/A</u>

(5)  Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

  <u>N/A</u>

Attorney's Signature: <u>/s/ Anthony S. Baish</u>   Date: <u>February 23, 2023</u>

Attorney's Printed Name: <u>Anthony S. Baish</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** [ ]  **No** [✓]

Address: <u>833 East Michigan Street, Suite 1800</u>

   <u>Milwaukee, WI 53202</u>

Phone Number: <u>(414) 273-3500</u>   Fax Number: <u>(414) 273-5198</u>

E-Mail Address: <u>tbaish@gklaw.com</u>

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>22-2628, 22-2629,</u> 22-2630, 22-2631, 22-2632, 22-2633, 22-2634, 22-2635, 22-2636, 22-2637

Short Caption: <u>Glenn Burton, Jr., et al. v. American Cyanamid Company, et al.</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

        ☐      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)      The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Armstrong Containers, Inc.

(2)      The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Morris, Manning & Martin, LLP; Bascom, Budish & Ceman S.C.

(3)      If the party, amicus or intervenor is a corporation:

      i)        Identify all its parent corporations, if any; and

        BWAY Corporation

      ii)       list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

      none

(4)      Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)      Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: <u>/s Robert P. Alpert</u>        Date: <u>10/5/22</u>

Attorney's Printed Name:  <u>Robert P. Alpert</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes  ☑  No  ☐

Address:  <u>1600 Atlanta Financial Center, 3343 Peachtree Road, NE</u>

     <u>Atlanta, GA 30326</u>

Phone Number: <u>404-233-7000</u>        Fax Number:  <u>404-365-9532</u>

E-Mail Address: <u>rpa@mmmlaw.com</u>

rev. 12/19 AK

Save As          Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>22-2628, 22-2629,</u> 22-2630, 22-2631, 22-2632, 22-2633, 22-2634, 22-2635, 22-2636, 22-2637

Short Caption: <u>Glenn Burton, Jr., et al. v. American Cyanamid Company, et al.</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

        ☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Armstrong Containers, Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Morris, Manning & Martin, LLP; Bascom, Budish & Ceman S.C.

(3)    If the party, amicus or intervenor is a corporation:

    i)        Identify all its parent corporations, if any; and

          BWAY Corporation

    ii)      list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

          none

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: <u>/s Jeffrey K. Douglass</u>     Date: <u>10/5/22</u>

Attorney's Printed Name: <u>Jeffrey K. Douglass</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☐  **No** ☑

Address: <u>1600 Atlanta Financial Center, 3343 Peachtree Road, NE</u>

    <u>Atlanta, GA 30326</u>

Phone Number: <u>404-233-7000</u>     Fax Number: <u>404-365-9532</u>

E-Mail Address: <u>jkd@mmmlaw.com</u>

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2628, 22-2629, 22-2630, 22-2631, 22-2632, 22-2633, 22-2634, 22-2635, 22-2636, 22-2637

Short Caption: Glenn Burton, Jr., et al. v. American Cyanamid Company, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

        [ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Armstrong Containers, Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Morris, Manning & Martin, LLP; Bascom, Budish & Ceman S.C.

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    BWAY Corporation

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    none

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s Eric A. Larson    Date: 10/4/22

Attorney's Printed Name: Eric A. Larson

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes [ ]    No [✓]

Address: 1600 Atlanta Financial Center, 3343 Peachtree Road, NE

Atlanta, GA 30326

Phone Number: 404-233-7000    Fax Number: 404-365-9532

E-Mail Address: elarson@mmmlaw.com

rev. 12/19 AK

Save As    Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>22-2628, 22-2629,</u> 22-2630, 22-2631, 22-2632, 22-2633, 22-2634, 22-2635, 22-2636, 22-2637

Short Caption: <u>Glenn Burton, Jr., et al. v. American Cyanamid Company, et al.</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

        ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Armstrong Containers, Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Morris, Manning & Martin, LLP; Bascom, Budish & Ceman S.C.

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        BWAY Corporation

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        none

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: <u>/s Timothy A. Bascom</u>    Date: <u>10/4/22</u>

Attorney's Printed Name: <u>Timothy A. Bascom</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  Yes ☐  No ☑

Address: <u>W193 N10975 Kleinmann Drive, Suite B</u>

    <u>Germantown, WI 53022</u>

Phone Number: <u>(414) 476-0800</u>    Fax Number: <u>N/A</u>

E-Mail Address: <u>tbascom@bbclaw.com</u>

Save As    Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>Nos. 22-2636, -2630</u>, -2632, -2633, -2634, -2635, -2637

Short Caption: <u>Cannon et al. v. Am. Cyanamid Co. et al. (consolidated appeal)</u>

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    The Sherwin-Williams Company

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Jones Day, Quarles & Brady, LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        None

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: <u>/s/ Leon F. DeJulius Jr.</u>    Date: <u>2/23/2023</u>

Attorney's Printed Name: <u>Leon F. DeJulius, Jr.</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** ☑  **No** ☐

Address: <u>250 Vesey Street, New York, NY 10281</u>

Phone Number: <u>212.326.3939</u>    Fax Number: <u>212.755.7306</u>

E-Mail Address: <u>lfdejulius@jonesday.com</u>

rev. 12/19 AK

Save As    Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>Nos. 22-2636, -2630</u>, -2632, -2633, -2634, -2635, -2637

Short Caption: <u>Cannon et al. v. Am. Cyanamid Co. et al. (consolidated appeal)</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    The Sherwin-Williams Company

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Jones Day, Quarles & Brady, LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        None

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: <u>/s/ Anderson T. Bailey</u>    Date: <u>2/23/2023</u>

Attorney's Printed Name: <u>Anderson T. Bailey</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** ☐  **No** ☑

Address: <u>500 Grant Street, Suite 4500, Pittsburgh, PA 15219</u>

Phone Number: <u>412.391.3939</u>    Fax Number: <u>412.394.4959</u>

E-Mail Address: <u>atbailey@jonesday.com</u>

rev. 12/19 AK

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>Nos. 22-2636, -2630</u>, -2632, -2633, -2634, -2635, -2637

Short Caption: <u>Cannon et al. v. Am. Cyanamid Co. et al. (consolidated appeal)</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    The Sherwin-Williams Company

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Jones Day, Quarles & Brady, LLP

(3)     If the party, amicus or intervenor is a corporation:

    i)     Identify all its parent corporations, if any; and

    None

    ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    None

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: <u>/s/ Jeffrey K. Spoerk</u>      Date: <u>2/23/2023</u>

Attorney's Printed Name: <u>Jeffrey K. Spoerk</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐   **No** ☑

Address: <u>411 East Wisconsin Avenue, Suite 2400, Milwaukee, Wisconsin 53202</u>

Phone Number: <u>414.227.5337</u>      Fax Number: <u>414.978.8970</u>

E-Mail Address: <u>jeff.spoerk@quarles.com</u>

rev. 12/19 AK

Save As      Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>Nos. 22-2636, -2630</u>, -2632, -2633, -2634, -2635, -2637

Short Caption: <u>Cannon et al. v. Am. Cyanamid Co. et al. (consolidated appeal)</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    The Sherwin-Williams Company

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Jones Day, Quarles & Brady, LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        None

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: <u>/s/ Evan W. Thomsen</u>    Date: <u>2/23/2023</u>

Attorney's Printed Name:  <u>Evan W. Thomsen</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** ☐  **No** ☑

Address:  <u>411 East Wisconsin Avenue, Suite 2400, Milwaukee, Wisconsin 53202</u>

Phone Number: <u>414.277.5270</u>    Fax Number: <u>414.978.8769</u>

E-Mail Address: <u>evan.thomsen@quarles.com</u>

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1(a) of the Federal Rules of Appellate Procedure, Armstrong Containers, Inc. ("Armstrong") states that its parent corporation is BWAY Corporation, and that no publicly held corporation owns 10% or more of its stock.

All law firms that have appeared for Armstrong (including proceedings in the district court) or are expected to appear for Armstrong in this Court are Morris, Manning & Martin, LLP and Bascom, Budish & Ceman, S.C.

/s/ *Robert P. Alpert*

Robert P. Alpert
*Counsel for Armstrong Containers, Inc.*

<u>C</u>ORPORATE <u>D</u>ISCLOSURE <u>S</u>TATEMENT

Pursuant to Rule 26.1(a) of the Federal Rules of Appellate Procedure, Atlantic Richfield Company ("Atlantic Richfield") states that its parent corporation is BP p.l.c., a publicly held company that owns 10% or more of Atlantic Richfield stock. No publicly held corporation owns 10% or more of stock in BP p.l.c.

All law firms that have appeared for Atlantic Richfield (including proceedings in the district court) or are expected to appear for Atlantic Richfield in this Court are Arnold & Porter Kaye Scholer LLP and Godfrey & Kahn, S.C.

  /s/ Sean Morris_____
Sean Morris
*Counsel for Atlantic Richfield Company*

<u>**CORPORATE DISCLOSURE STATEMENT**</u>

Pursuant to Rule 26.1(a) of the Federal Rules of Appellate Procedure, EIDP, Inc. (formerly E. I. du Pont de Nemours and Company and referred to herein as "DuPont") states that its parent corporation is Corteva, Inc., which is a publicly held corporation that owns 10% or more of its stock.

All law firms that have appeared for DuPont (including proceedings in the district court) or are expected to appear for DuPont in this Court are McGuireWoods LLP and Michael Best & Friedrich LLP.


 /s/ *Brian D. Schmalzbach*
Brian D. Schmalzbach
*Counsel for EIDP, Inc.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1(a) of the Federal Rules of Appellate Procedure, The Sherwin-Williams Company ("Sherwin-Williams") states that it does not have a parent company, and that no publicly held corporation owns 10% or more of its stock.

All law firms that have appeared for Sherwin-Williams (including proceedings in the district court) or are expected to appear for Sherwin-Williams in this Court are Jones Day and Quarles & Brady LLP.

 /s/ *Leon F. DeJulius, Jr.*
Leon F. DeJulius, Jr.
*Counsel for The Sherwin-Williams Company*

v

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENTS ............................................................ii

TABLE OF CONTENTS................................................................................................vi

TABLE OF AUTHORITIES ........................................................................................ix

INTRODUCTION ............................................................................................................1

COUNTERSTATEMENT OF JURISDICTION ........................................................5

COUNTERSTATEMENT OF THE ISSUES PRESENTED FOR REVIEW ..............6

COUNTERSTATEMENT OF THE CASE ..................................................................7

I.      Plaintiffs .............................................................................................................7

II.     Plaintiffs maneuvered their cases into a coordinated federal
        proceeding. ......................................................................................................8

III.    Plaintiffs pursued a coordinated litigation strategy.....................................10

IV.     The District Court held as a matter of law that Defendants did not
        have a duty to warn ......................................................................................13

V.      Plaintiffs did not appeal the summary judgment against them or the
        District Court's first application of issue preclusion....................................15

VI.     Plaintiffs conceded in *Allen* and *Trammell* that they had no surviving
        negligent failure-to-warn claims. ..................................................................17

VII.    This Court corrected legal errors and reversed the judgments against
        Defendants in the First Wave. ......................................................................19

VIII.   Defendants renewed their motions for summary judgment in all cases. ..20

IX.     The District Court granted summary judgment in all cases. ......................22

        A.      The District Court declined to reconsider its prior rulings in
                *Burton*, *Owens*, *Sifuentes*, *Allen*, and *Trammell*......................................22

        B.      The District Court applied law-of-the-case doctrine to all
                remaining Plaintiffs in *Allen* and *Trammell*.........................................24

        C.      The District Court applied issue preclusion to *Gibson* and *Valoe*.....24

        D.      The District Court denied Plaintiffs' request to alter or amend.......25

**TABLE OF CONTENTS**
**(cont'd)**

Page

SUMMARY OF THE ARGUMENT ...................................................27

ARGUMENT ...................................................................................30

I.    The District Court correctly denied the Second-Wave Plaintiffs'
      motion for reconsideration..................................................30

      A.    Standard of Review...................................................30

      B.    The District Court did not abuse its discretion because there
            was no basis for reconsideration ..........................................31

      C.    Correcting a misapplication of Wisconsin law does not "change"
            Wisconsin law. ........................................................33

      D.    Reconsideration is not a vehicle for changing legal strategy............35

II.   The District Court correctly applied law of the case to the remaining
      Plaintiffs in *Allen* and *Trammell.* ..........................................37

      A.    Standard of Review...................................................37

      B.    Law of the case applies to all Plaintiffs in *Allen* and *Trammell* .........38

      C.    Plaintiffs' argument that the Second-Wave Plaintiffs were
            "effectively severed" is both untimely and wrong ...........................39

            1.    Plaintiffs waived their "effective severance" argument.........39

            2.    Plaintiffs ignore the record. ..............................................40

      D.    Plaintiffs cannot invoke any exception to law of the case................43

      E.    Plaintiffs waived any argument regarding the District Court's
            alternative holding for judgment in *Allen* and *Trammell.*..................47

III.  Issue preclusion applies in *Gibson* and *Valoe*................................48

      A.    Standard of Review...................................................48

      B.    Issue preclusion can and does apply in these coordinated
            cases, as Plaintiffs expected it would. ...................................49

      C.    Plaintiffs do not dispute the District Court's reasoning...................53

**TABLE OF CONTENTS**
**(cont'd)**

Page

**D.** Applying issue preclusion was fundamentally fair. .........................56

**E.** Law of the case independently warrants judgment for Defendants....................................................................................58

**IV.** Plaintiffs' duty-to-warn arguments are not before this Court....................59

**V.** In all events, Defendants had no duty to warn.................................................60

**A.** The District Court applied the correct legal standard. .....................61

**B.** The District Court relied on undisputed evidence............................62

**C.** Plaintiffs' arguments about lead dust are unavailing.......................64

**VI.** Plaintiffs' collateral attacks on *Burton II* are improper and incorrect..........68

**A.** *Thomas* did not grant any "right to a recovery." .................................69

**B.** No authority supports an "ordinary negligence" products claim. ...................................................................................................70

**C.** Plaintiffs assert an incorrect standard of duty. ..................................72

**D.** Plaintiffs misstate Wisconsin strict-liability principles.....................73

**E.** Plaintiffs waived any request for extraordinary review and cannot meet the requirements for certification or hearing en banc. 74

CONCLUSION............................................................................................................78

**TABLE OF AUTHORITIES**

**Page**

CASES

*Ackermann v. United States,*
   340 U.S. 193 (1950) ................................................................. 35

*Affiliated FM Ins. Co. v. Trane Co.,*
   831 F.2d 153 (7th Cir. 1987) ................................................... 52

*Allen v. Am. Cyanamid,*
   527 F. Supp. 3d 982 (E.D. Wis. 2021) ................................... 19, 53, 61, 63

*Antwaun A. v. Heritage Mut. Ins. Co.,*
   596 N.W.2d 456 (Wis. 1999) ................................................... 63

*Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic,*
   152 F.3d 588 (7th Cir. 1998) ................................................... 3, 68, 74

*Brenner v. Amerisure Mut. Ins. Co.,*
   893 N.W.2d 193 (Wis. 2017) ................................................... 72, 73

*Burton v. Am. Cyanamid,*
   334 F. Supp. 3d 949 (E.D. Wis. 2018) ................................... passim

*Burton v. E.I. du Pont de Nemours & Co.,*
   994 F.3d 791 (7th Cir. 2021) ................................................... passim

*Caisse Nationale de Credit Agricole v. CBI Indus., Inc.,*
   90 F.3d 1264 (7th Cir. 1996) ................................................... 32, 36

*Cameo Convalescent Center, Inc. v. Percy,*
   800 F.2d 108 (7th Cir. 1986) ................................................... 34

*Cent. Transp., Inc. v. Four Phase Sys., Inc.,*
   936 F.2d 256 (6th Cir. 1991) ................................................... 56

*Cincinnati Life Ins. Co. v. Beyrer,*
   722 F.3d 939 (7th Cir. 2013) ................................................... 36

# TABLE OF AUTHORITIES
## (cont'd)

**Page**

Circle Block Partners, LLC v. Fireman's Fund Ins. Co.,
    44 F.4th 1014 (7th Cir. 2022) .......................................................... 77

Daza v. Indiana,
    2 F.4th 681 (7th Cir. 2021) .......................................................... 4, 36

DeBruyne v. Equitable Life Assurance Soc.,
    920 F.2d 457 (7th Cir. 1990) ............................................................ 35

Disimone v. Browner,
    121 F.3d 1262 (9th Cir. 1997) .......................................................... 59

Donovan v. Est. of Fitzsimmons,
    778 F.2d 298 (7th Cir. 1985) .................................................. 49, 53, 56

Douglas v. Western Union Co.,
    955 F.3d 662 (7th Cir. 2020) ............................................................ 57

Edmonds v. Smith,
    922 F.3d 737 (6th Cir. 2019) .................................................. 42, 43, 46

Eskridge v. Cook Cty.,
    577 F.3d 806 (7th Cir. 2009) ............................................................ 35

Essex Ins. Co. v. Galilee Med. Ctr. S.C.,
    815 F.3d 319 (7th Cir. 2016) .................................................. 45, 46, 58

Fednav Int'l Ltd. v. Cont'l Ins. Co.,
    624 F.3d 834 (7th Cir. 2010) .................................................... 40, 45

Gonzalez v. Banco Central Corp.,
    27 F.3d 751 .......................................................................... 55

Hamer v. County of Lake,
    871 F.2d 58 (7th Cir. 1989) ............................................................ 68

Hebron Pub. Sch. Dist. No. 13 of Morton Cty. v. U.S. Gypsum Co.,
    723 F. Supp. 416 ...................................................................... 56

## TABLE OF AUTHORITIES
### (cont'd)

Page

*Hocking v. City of Dodgeville,*
    768 N.W.2d 552 (Wis. 2009) ......................................................... 69, 70, 72

*Horst v. Deere & Co.,*
    769 N.W.2d 536 (Wis. 2009) ................................................................... 74

*Hutto v. Finney,*
    437 U.S. 678 (1978) ............................................................................. 46, 56

*Jensen v. Milwaukee Mut. Ins. Co.,*
    554 N.W.2d 232 (Wis. Ct. App. 1996) ...........................................passim

*Kessel ex rel. Swenson v. Stansfield Vending, Inc.,*
    714 N.W.2d 206 (Wis. Ct. App. 2006) ................................................. 65

*Key v. Sullivan,*
    925 F.2d 1056 (7th Cir. 1991) .............................................................. 43

*LTV Steel Co. v. Nw. Eng'g & Const., Inc.,*
    41 F.3d 332 (7th Cir. 1994) .................................................................. 76

*Mahran v. Advoc. Christ Med. Ctr.,*
    12 F.4th 708 (7th Cir. 2021) ................................................................ 40

*Manor Healthcare Corp. v. Guzzo,*
    894 F.2d 919 (7th Cir. 1990) ........................................................... 59, 60

*Matter of Chicago, Rock Island & Pac. R. Co.,*
    865 F.2d 807 (7th Cir. 1988) ................................................................ 65

*In re: Paternity of Mayonia M.M.,*
    551 N.W.2d 31 ...................................................................................... 55

*McGreal v. Village of Orland Park,*
    928 F.3d 556 (7th Cir. 2019) ................................................................ 60

*McMahon v. Bunn-O-Matic Corp.,*
    150 F.3d 651 (7th Cir. 1998) ................................................................ 65

**TABLE OF AUTHORITIES**
**(cont'd)**

Page

*Michelle T. v. Crozier,*
    495 N.W.2d 327 (Wis. 1993) .................................................................... 56, 57

*Norgaard v. DePuy Orthopaedics, Inc.,*
    121 F.3d 1074 (7th Cir. 1997) .................................................................... 33

*Paige K.B. ex rel. Peterson v. Steven G.H.,*
    594 N.W.2d 370 (Wis. 1999) .................................................................... 46, 55

*Parklane Hosiery Co., Inc. v. Shore,*
    439 U.S. 322 (1979) .................................................................................... 49, 56

*Peace v. Nw. Nat'l Ins. Co.,*
    596 N.W.2d 429 (Wis. 1999) .................................................................... 63

*Peoples v. United States,*
    403 F.3d 844 (7th Cir. 2005) .................................................................... 44

*Publishers Res., Inc. v. Walker-Davis Pubs., Inc.,*
    762 F.2d 557 (7th Cir. 1985) .................................................................... 60

*Rothwell Cotton Co. v. Rosenthal & Co.,*
    827 F.2d 246 (7th Cir. 1987) .................................................................... 32

*Salsbury v. Miller,*
    578 N.W.2d 209 (Wis. Ct. App. 1998) .................................................. 52

*Samuelson v. LaPorte Community School Corp.,*
    526 F.3d 1046 (7th Cir. 2008) .................................................................. 58, 60

*Schering Corp. v. Ill. Antibiotics Co.,*
    89 F.3d 357 (7th Cir. 1996) ...................................................................... 32, 35

*Schreiner v. Wieser Concrete Prods., Inc.,*
    720 N.W.2d 525 (Wis. Ct. App. 2006) .................................................. 61

*Sifuentes v. E.I. du Pont de Nemours & Co. et al.,*
    No. 2006CV000136 (Milwaukee Cir. Ct.) .............................................. 8

## TABLE OF AUTHORITIES
### (cont'd)

**Page**

*Southworth v. Bd. of Regents of Univ. of Wis. Sys.*,
  376 F.3d 757 (7th Cir. 2004) ...................................................... 65

*State Farm Mut. Auto. Ins. Co. v. Pate*,
  275 F.3d 666 (7th Cir. 2001) ................................................. 76, 77

*Strasser v. Transtech Mobile Fleet Serv., Inc.*,
  613 N.W.2d 142 (Wis. 2000) ............................................... passim

*Taylor v. Sturgell*,
  553 U.S. 880 (2008) .............................................................. 48, 55

*Thomas v. Mallett*,
  2010 WL 5117278 (Wis. Ct. App. 2010) .............................. 9, 70

*Thomas v. Mallett*,
  701 N.W.2d 523 (Wis. 2005) ............................... 8, 69, 70, 74

*Tice v. Am. Airlines*,
  162 F.3d 966 (7th Cir. 1998) ........................................................ 55

*U.S. Filter/JWI, Inc. v. J-Parts, L.L.C.*,
  733 F. App'x 804 (6th Cir. 2018) .............................................. 42

*United Cent. Bank v. KMWC 845, LLC*,
  800 F.3d 307 (7th Cir. 2015) ...................................................... 30

*United States v. Arterbury*,
  961 F.3d 1095 (10th Cir. 2020) ............................................ 34, 44

*United States v. City of Chicago*,
  853 F.2d 572 (7th Cir. 1988) ............................................... 37, 38

*United States v. Flores*,
  929 F.3d 443 (7th Cir. 2019) ............................................... 59, 60

*United States v. Johns*,
  686 F.3d 438 (7th Cir. 2012) ...................................................... 59

**TABLE OF AUTHORITIES**
**(cont'd)**

Page

*United States v. Peel,*
    668 F.3d 506 (7th Cir. 2012) ....................................................... 59

*Velsicol Chem. Corp. v. Monsanto Co.,*
    579 F.2d 1038 (7th Cir. 1978) ..................................................... 37

*Vesey v. Envoy Air, Inc.,*
    999 F.3d 456 (7th Cir. 2021) ....................................................... 47

*Virnich v. Vorwald,*
    664 F.3d 206 (7th Cir. 2011) ......................................................... 8

*Waid v. Merrill Area Pub. Sch.,*
    130 F.3d 1268 (7th Cir. 1997) ..................................................... 38

*Williams v. Chicago Bd. of Educ.,*
    155 F.3d 853 (7th Cir. 1998) ....................................................... 38

*Williams v. Leach,*
    938 F.2d 769 (7th Cir. 1991) ................................................. 47, 54

**STATUTES**

28 U.S.C.
    § 1291 ............................................................................................ 5
    § 1332(a)(1) .................................................................................. 5

Wis. Stat.
    § 821.01 .................................................................................. 75, 76

**OTHER AUTHORITIES**

40 C.F.R. § 745.107 ....................................................................... 67

*Black's Law Dictionary* (11th ed. 2019) ....................................... 38

18B Fed. Prac. & Proc. Juris. § 4478 (3d ed.) .............................. 44

**TABLE OF AUTHORITIES**
(cont'd)

**Page**

Fed. R. App. P. 27 ................................................................................. 75

Fed. R. App. P. 32 ................................................................................... 1

Fed. R. App. P. 35 ............................................................................ 75, 76

Fed. R. Civ. P. 20 ................................................................... 22, 38, 39, 41

Fed. R. Civ. P. 21 ........................................................................ 40, 41, 42

Fed. R. Civ. P. 54 ................................................................................. 31

Fed. R. Civ. P. 56 ................................................................................. 21

Fed. R. Civ. P. 59 ................................................................................. 25

L. Cir. Rule 52 ..................................................................................... 75

Restatement (Second) of Torts § 402A ..................................................... 73

## INTRODUCTION

This is a successive appeal in product-liability litigation that this Court last addressed in *Burton v. E.I. du Pont de Nemours & Co.*, 994 F.3d 791 (7th Cir. 2021) ("*Burton II*"). *Burton II* reversed judgments against three former manufacturers (or their alleged successors) of white lead carbonate pigments ("WLCs"). The Court held that, under Wisconsin law, Plaintiffs could not recover on an "ordinary negligence" claim without a product defect, and that the duty analysis for a warning defect is the same for both negligence and strict liability. *Id.* at 822. The District Court previously had held that Defendants did not owe Plaintiffs a duty to warn at the time of their alleged exposures to WLCs in the 1990s or 2000s. *Id.* at 808-09. That undisputed ruling, *Burton II* held, compelled judgment against Plaintiffs on all claims. *Id.* at 819-20, 823, 831-32.

This appeal attacks the District Court's application of *Burton II*. All Plaintiffs in this litigation—including those in *Burton II*—joined their identical claims together in seven related cases against Appellees Armstrong, Atlantic Richfield, DuPont, and Sherwin-Williams (collectively, "Defendants"). All allege exposure in the 1990s or 2000s to residential paint containing WLCs. Together they "waged a coordinated campaign" before the same U.S. District Judge who, at Plaintiffs' request, administered these cases "jointly as a single litigation" for over a decade. Appellants' Short Appendix ("SA") at 5.

1

On remand from *Burton II*, the District Court applied ordinary tools of efficiency and finality, including law of the case, issue preclusion, and *stare decisis*. First, the District Court declined to reconsider its earlier summary judgments in five of the seven coordinated cases holding that Defendants did not have a duty to warn Plaintiffs. Then, noting that all Plaintiffs had "agreed to litigate their claims together … in a tightly coordinated manner" and had received the same "full and fair round of litigation," SA29 n.12, SA33, the trial court applied its no-duty ruling to all remaining Plaintiffs through law-of-the-case and issue-preclusion doctrines. SA33.

This Court should affirm those common-sense rulings. For many years, Plaintiffs repeatedly asked the District Court to use claims "representative of … this litigation as a whole" to decide "threshold legal issues" that "apply to all cases" only once, "not on a case-by-case basis." Defendants-Appellees' Supplemental Appendix ("DSA") at 52, 54. Plaintiffs also had opportunities to show that Defendants owed them a duty to warn, but could not—as a matter of law—satisfy Wisconsin's binding standard for duty. That objective standard examines what **manufacturers** had "'reason to believe'" at the time of Plaintiffs' alleged exposures to WLCs in the 1990s or 2000s. *Burton v. Am. Cyanamid*, 334 F. Supp. 3d 949, 961 (E.D. Wis. 2018) ("*Burton I*") (quoting *Strasser v. Transtech Mobile Fleet Serv., Inc.*, 613 N.W.2d 142, 155 (Wis. 2000)). And because manufacturers and

government entities indisputably had warned consumers about lead in paint for decades, Defendants did not owe Plaintiffs or their caregivers a duty to warn in the 1990s and 2000s. *Id.* at 961. Indeed, Plaintiffs previously conceded they had no surviving negligent failure-to-warn claims under that analysis, and the District Court did not abuse its discretion in applying its ruling across all jointly administered WLC cases.

The District Court then faithfully applied *Burton II* and entered judgment against Plaintiffs on their ordinary negligence and strict-liability claims as well. This Court's decision in *Burton II* was "binding … on remand." *Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*, 152 F.3d 588, 591 (7th Cir. 1998). Even Plaintiffs agree that *Burton II* "required" the judgments against them on all claims once the duty question was resolved in Defendants' favor. Br. of Plaintiffs-Appellants ("Opening Br.") 63.

Plaintiffs provide no legal basis why the District Court should have granted them "a second bite at the apple when, all along," they were "aligned in interest and pursuing a common legal strategy." SA34. They do not argue that the District Court applied incorrect legal standards for reconsideration, law of the case, or issue preclusion. They concede no newly discovered evidence could satisfy an exception to those doctrines. They do not identify any change in the Wisconsin law governing their claims. And their request that the Court overturn *Burton II*'s

3

binding precedent ignores that decision's reasoning and the volumes of Wisconsin precedent on which this Court relied.

The crux of Plaintiffs' appeal is that they should be "given an opportunity to change litigation strategy."  Opening Br. 19.  But the law does not indulge requests for do-overs.  *See Daza v. Indiana*, 2 F.4th 681, 683 (7th Cir. 2021) (noting the "logjam that would develop if people could take second, third, or nth bites at the apple").  And no legal principle justifies the waste and inefficiency that would come from remanding this litigation just so the District Court could apply the same undisputed legal standard to the same undisputed evidence and repeat over and over again its holding that Defendants did not have a duty to warn.  The judgments below should be affirmed.

## <u>COUNTERSTATEMENT OF JURISDICTION</u>

Except as noted here, Defendants agree that the jurisdictional summary in the Opening Brief is complete and correct; that the District Court had diversity jurisdiction over all claims pursuant to 28 U.S.C. § 1332(a)(1); and that this Court has jurisdiction over all matters now on appeal pursuant to 28 U.S.C. § 1291.  *See* Opening Br. 3.  Defendants submit this separate jurisdictional statement only to note that the principal place of business of Atlantic Richfield is Texas, not California.  *Allen* ECF 161 ¶ 167.  That correction to Plaintiffs' Jurisdictional Statement does not impact the jurisdiction of either the District Court or this Court.

## COUNTERSTATEMENT OF THE ISSUES PRESENTED FOR REVIEW

The issues presented for review in these consolidated appeals are:

**I.**     Did the District Court abuse its discretion in declining to reconsider its prior holding against the "Second-Wave" Plaintiffs that Defendants did not have a duty to warn for purposes of any negligent failure-to-warn claim?

**II.**     Did the District Court abuse its discretion in applying its prior holding and the holdings of this Court in *Burton II* as law of the case that compelled judgment for Defendants on all claims in *Allen* and *Trammell*?

**III.**     Did the District Court err in holding that issue preclusion can apply as a matter of law to claims in *Allen*, *Trammell*, *Gibson*, and *Valoe*, and that it was fundamentally fair to preclude relitigation of a settled issue?

**IV.**     Should the judgments be affirmed on the alternative grounds that Plaintiffs cannot now challenge the question of whether Defendants had a duty to warn in the 1990s and 2000s, and the District Court's analysis of that question was correct in any event and compels judgment for Defendants on all claims under *Burton II*?

## COUNTERSTATEMENT OF THE CASE

### I.     Plaintiffs

The District Court's opinions describe the "coordinated campaign" of cases "administered jointly as a single litigation," which included "waves" of Plaintiffs. SA5.   On appeal, Plaintiffs now discuss so-called "groups," but that is not consistent with how the parties litigated these cases nor how the District Court decided them.   Defendants adopt the District Court's terminology:

| Term | Plaintiffs | Related Captions (E.D. Wis.) |
|---|---|---|
| "First-Wave" Plaintiffs (SA14, SA53) | Glenn Burton, Jr. Ravon Owens Cesar Sifuentes | *Burton v. Am. Cyanamid*, No. 07-cv-303 *Owens v. Am. Cyanamid*, No. 07-cv-441 *Sifuentes v. Am. Cyanamid*, No. 10-cv-075 |
| "Second-Wave" Plaintiffs (SA15) | LaTonya Cannon Tyann McHenry D'Angelo Thompson Dijonae Trammell | *Allen v. Am. Cyanamid*, No. 11-cv-055 (Cannon, McHenry, and Thompson) *Trammell v. Am. Cyanamid*, No. 14-cv-1423 (Trammell) |
| "Remaining *Allen* and *Trammell* Plaintiffs" (SA18) | Approximately 150 Plaintiffs | *Allen v. Am. Cyanamid*, No. 11-cv-055 *Trammell v. Am. Cyanamid*, No. 14-cv-1423 |
| "*Valoe* and *Gibson*" Plaintiffs (SA24) | Deziree Valoe Detareion Valoe Ernest Gibson | *Valoe v. Am. Cyanamid*, No. 11-cv-425 *Gibson v. Am. Cyanamid*, No. 07-cv-864 |

## II.     Plaintiffs maneuvered their cases into a coordinated federal proceeding.

In March 2007, Defendants removed *Burton* to the Eastern District of Wisconsin. *Burton* ECF 3.[1]  Two months later, Defendants removed *Owens* to the same court. *Owens* ECF 1.  Both complaints alleged that Plaintiffs had ingested WLCs from housepaint, but could not identify who manufactured the pigments. *Burton* ECF 3-1 at 3-4; *Owens* ECF 1-1 at 3-4.  Plaintiffs thus invoked Wisconsin's "risk-contribution" theory, which relieves products-liability plaintiffs from pleading manufacturer identification in certain instances. *See Thomas v. Mallett*, 701 N.W.2d 523 (Wis. 2005).  In September 2007, Defendants removed the materially identical *Gibson* case. *Gibson* ECF 1.  *Burton* and *Owens* were assigned to Judge Adelman; *Gibson* was assigned to Judge Randa.

The same counsel representing Plaintiffs Burton, Owens, and Gibson—who also represented the Plaintiff in *Thomas*—had filed a number of other cases against Defendants in Wisconsin state court.  These cases also invoked "risk-contribution" under *Thomas*, and many named non-diverse defendants, typically the Plaintiff's landlord. *See, e.g., Sifuentes v. E.I. du Pont de Nemours & Co. et al.*, No. 2006CV000136 (Milwaukee Cir. Ct.).[2]

---

[1]  ECF citations reference the dockets identified in the chart on page 7.

[2]  State court docket sheets are public records subject to judicial notice. *See Virnich v. Vorwald*, 664 F.3d 206, 209 (7th Cir. 2011); *see also* docket available at wcca.wicourts.gov/caseDetail.html?caseNo=2006CV000136&countyNo=40&index=0.

In 2010, however, Plaintiffs' preferred forum for litigating their risk-contribution claims changed to federal court. By that time, Defendants had obtained a favorable jury verdict in *Thomas*, and the Supreme Court of Wisconsin had decided *Godoy v. E.I. du Pont de Nemours & Co.*, which ruled in the context of WLCs that product-liability negligence claims require proof of defect, and that WLC design-defect claims under *Thomas* fail as a matter of law. *See* 768 N.W.2d 674, 681 n.7, 685-86 (Wis. 2009). Shortly after *Godoy*, Cesar Sifuentes voluntarily dismissed his state court action and filed *Sifuentes*, marking it related to *Burton*, *Owens*, and *Gibson*. *Sifuentes* ECF 1-1. The case was assigned to Judge Adelman.

In December 2010, the Wisconsin Court of Appeals affirmed the defense verdict in *Thomas*. *See Thomas v. Mallett*, 2010 WL 5117278 (Wis. Ct. App. 2010) (table). The next month, over 150 Plaintiffs followed *Sifuentes* into federal court, joining in a single case, *Allen*, and marking their complaint as related to *Burton*, *Owens*, and *Sifuentes* pending before Judge Adelman. *Allen* ECF 1-1. Many of the Plaintiffs named in *Allen* previously had filed their claims in state court but voluntarily dismissed those cases and joined the federal action against only diverse WLC manufacturers (or their alleged successors). *See Allen* ECF 455-3. A few months later, two more Plaintiffs filed *Valoe*, which Plaintiffs marked as related to *Burton*, *Owens*, *Sifuentes*, and *Allen*. *Valoe* ECF 1-1. In 2014, three

Plaintiffs named in *Allen* jointly refiled their claims in a new federal action, *Trammell*. *Trammell* ECF 1; *Allen* ECF 40, 65.[3]

## III.  Plaintiffs pursued a coordinated litigation strategy.

Plaintiffs consistently have litigated their claims pursuant to a single, cohesive strategy.  In February 2015, Defendants moved to dismiss or sever the claims of the approximately 150 Plaintiffs in *Allen*.  *Allen* ECF 82 at 1, 17. Defendants argued that the *Allen* Plaintiffs had misjoined their claims, because individual questions about causation, injury, and comparative negligence specific to each Plaintiff would overly complicate any multi-claimant jury trial.  *Allen* ECF 82 at 8, 11.  But the *Allen* Plaintiffs opposed severance, especially of their failure-to-warn claims.  DSA4-21.  "Proof of the failure to warn elements," Plaintiffs argued, "will be particularly conducive to … common discovery," while proving those elements at trial would "require much of the same evidence irrespective of which individual plaintiff is being considered."  DSA17.  The District Court agreed, declining to sever any claims from *Allen*.  DSA41-42.

In March 2015, Plaintiffs requested that Judge Adelman select a subset of Plaintiffs across all cases pending before him for a "Bellwether Pool" comprising "select cases that [the parties] believe are the most representative of the cases in

---

[3]  The *Trammell* Plaintiffs all are citizens of Georgia, where Armstrong maintains its principal place of business.  Those Plaintiffs refiled their claims against all Defendants except Armstrong.  *Trammell* ECF 1 at 3.

this litigation, as a whole." DSA2. Plaintiffs proposed advancing those claims for discovery and trial in part, because it would "allow for coordinated motion practice on issues present in **all** of the cases." DSA3 (emphasis added). "There are clearly some threshold legal issues that will, of course, apply to all cases," Plaintiffs argued, and those issues "should be dealt with once, not on a case-by-case basis." *Id*.

Similarly, in June 2015, Plaintiffs requested that Judge Adelman consolidate all of their cases—including *Gibson*, then assigned to Judge Randa—so that pending motions to dismiss could be decided together. DSA22-27. In a motion captioned in all cases, Plaintiffs argued that partial consolidation was necessary "to avoid the possibility for inconsistent or contradictory rulings" on a single question identical to all cases. DSA24. Resolving that question in one proceeding, Plaintiffs maintained, would not cause Defendants prejudice "other than maybe the fact that they will not get two bites at the apple on the same issue in front of two different Judges." DSA26. Judge Adelman held that the common legal issues in each case were "identical," ordered partial consolidation to resolve the pending motions to dismiss, and denied the motions in a single opinion captioned in each case. DSA30; *Burton* 327 at 14-15.

In February 2016, Plaintiffs formally moved for a case management order ("CMO") to coordinate all WLC cases as a single litigation. DSA47-55. In one

motion captioned for all cases and filed identically on all dockets, Plaintiffs again argued that "[t]he best route to a timely and efficient resolution of these cases is to implement a coordinated discovery effort in a limited number of cases, and then to conduct early bellwether trials on a rolling basis."  DSA50.  To that end, Plaintiffs proposed designating *Burton*, *Owens*, and *Sifuentes* as "Initial Trial Cases"—later known as the First-Wave cases—to be prepared first and briefed together, and that the parties select an additional set of Plaintiffs "most representative of the cases in this litigation, as a whole," to follow.  DSA51-52.

One key feature of Plaintiffs' plan was coordinated motion practice, which would allow the trial court to decide common legal issues across all of the WLC cases before Judge Adelman.  Plaintiffs reiterated their argument that:

> [C]oordination of the discovery and trial schedules for the Initial Trial Cases and Bellwether Pool will provide additional efficiencies in that it will allow for coordinated motion practice on issues present in all of the cases. **There are clearly some threshold legal issues that will, of course, apply to all cases.  Those issues should be dealt with once, not on a case-by-case basis.**

DSA53-54 (emphasis added).

In April 2016, Judge Adelman entered a single CMO, captioned and filed identically in all cases, that substantially conformed to Plaintiffs' proposal.

DSA56-61.[4]  As Plaintiffs requested, *Burton*, *Owens*, and *Sifuentes* proceeded first with simultaneous discovery and dispositive motion practice.  DSA57.  The District Court also adopted Plaintiffs' proposal for subsequent waves:  Plaintiffs would choose half of the Second-Wave Plaintiffs, and Defendants would choose the other half.  DSA58-59.  Judge Adelman amended his CMO to include *Gibson* after it was reassigned from Judge Randa in August 2016.  *Gibson* ECF 328.

**IV.  The District Court held as a matter of law that Defendants did not have a duty to warn.**

After years of joint discovery, Defendants filed summary judgment motions in the First-Wave cases in 2017.  Among these were motions arguing that Plaintiffs' failure-to-warn claims failed as a matter of law.  *Burton* ECF 572, 614.

The First-Wave Plaintiffs opposed those motions.  *Burton* ECF 796, 890.  Yet they conceded there was no genuine dispute as to the historical record common to all parties in this litigation, including that local, state, and federal government authorities had been warning consumers of the risks of lead in housepaint since the 1970s—decades before any Plaintiff's alleged exposure to WLCs in the 1990s and 2000s.  DSA71.  Plaintiffs likewise conceded that Defendants and other WLC

---

[4]  The Court ultimately entered nine CMOs, each bearing the captions of, and jointly governing, all of Plaintiffs' coordinated cases.  *See Burton* ECF 352, 437, 478, 506, 519, 527, 720, 785, 1039.  After the *Burton* trial, the Court likewise jointly administered the remaining cases through identical orders captioned for all cases and filed in every docket.  *See, e.g., Allen* ECF 359, 367, 422, 828, 1093.

pigment manufacturers had included warning labels on WLC-containing paints since at least 1955.  DSA65.

Those undisputed facts compelled summary judgment for Defendants on Plaintiffs' negligent failure-to-warn claims.  The District Court reasoned that, under Wisconsin law, a manufacturer has a duty to warn only if it has "'no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition.'"  *Burton I*, 334 F. Supp. 3d at 961 (quoting *Strasser v. Transtech Mobile Fleet Serv., Inc.*, 613 N.W.2d 142, 155 (Wis. 2000)).  It was undisputed that "Sherwin Williams and other paint manufacturers had issued product warnings since at least 1955 … while federal, state and local governments have warned of risks of lead in the home[] since the 1970s."  *Id.*  Thus, WLC manufacturers "had ample reason to believe that persons residing in homes with older paint would be aware of the toxicity of the lead compounds possibly in the paint, and of the various mechanisms by which that lead might be ingested."  *Id.*  That holding precluded any duty to warn in the 1990s and 2000s about the alleged dangers of WLCs, and foreclosed Plaintiffs "from pursuing negligence claims that rely on a duty-to-warn theory."  *Id.*; *see also Burton* ECF 1066 at 5 n.3 (holding that, "[a]s plaintiffs acknowledge, industry and government had warned of the risks of lead in homes with older paint for decades before plaintiffs' alleged exposure; therefore manufacturers had reason to believe that the plaintiffs (or their caregivers) would

14

recognize [the] dangerous condition of the product, such that the manufacturers owed the plaintiffs no duty to warn." (citing *Strasser*)).

At that time, however, the District Court concluded that its ruling did not compel judgment against Plaintiffs on all claims. Judge Adelman allowed Plaintiffs "to pursue negligence claims based on the general duty of ordinary care," which he held did not require a duty to warn. *Burton I*, 334 F. Supp. 3d at 961. The District Court also denied summary judgment as to Plaintiffs' strict-liability failure-to-warn claims: While "the duty that must be established" for a negligent failure-to-warn claim "is necessarily a duty to the plaintiff," the court reasoned that Plaintiffs only needed to show "a general duty owed at the moment of sale" for strict liability. *Id*. at 958-59.

## V. Plaintiffs did not appeal the summary judgment against them or the District Court's first application of issue preclusion.

Plaintiffs Burton, Owens, and Sifuentes moved to consolidate their remaining claims for a single trial. DSA77-85; DSA86-92. A consolidated First-Wave trial, they argued, would be "a fair and efficient means to resolve the numerous [WLC] cases [then] pending before the Court" by "enabl[ing] the Court to obtain valuable findings which could provide a pathway toward resolving all of the cases." DSA78. The alternative would be at least fifteen years of consecutive trials to resolve the claims of over 150 total Plaintiffs. DSA87.

Judge Adelman granted that motion and held the consolidated jury trial in May 2019. *Burton* ECF 1117, 1611. At the conclusion of the evidence, the District Court granted a renewed motion to dismiss for lack of personal jurisdiction from defendant American Cyanamid Co. ("Cyanamid") and submitted the remainder of the case to the jury. *Burton* ECF 1611 at 7. Of the four remaining Defendants, the jury found Armstrong, DuPont, and Sherwin-Williams liable for both "ordinary negligence" and strict-liability failure-to-warn, and Atlantic Richfield neither negligent nor strictly liable. *Burton* ECF 1602, 1603, 1604.

After trial, Cyanamid moved to dismiss all remaining cases for lack of personal jurisdiction, asserting issue preclusion based on the ruling in the First-Wave cases. *Allen* ECF 328. Judge Adelman applied issue preclusion and dismissed Cyanamid from the remaining cases. *See* DSA108-14. The court held that, although those other Plaintiffs were not party to the consolidated trial, their interests were "exactly the same" with respect to the jurisdictional question, there was sufficient identity of interests among them, and issue preclusion was "fundamentally fair." *Id.* at 3-4. No Plaintiff appealed that ruling.

After the consolidated trial, Sherwin-Williams, DuPont, and Armstrong appealed the verdicts against them. Among other issues, the appeal reasserted that Wisconsin law does not recognize a products-based "ordinary negligence" claim without proof of defect, and that negligence and strict-liability failure-to-

warn claims are subject to the same duty standard.  The First-Wave Plaintiffs chose not to cross-appeal the District Court's "ruling that the defendants had no duty to warn for purposes of the negligence claims."  *Burton II*, 994 F.3d at 823.

## VI. Plaintiffs conceded in *Allen* and *Trammell* that they had no surviving negligent failure-to-warn claims.

Defendants moved to stay all cases pending the appeal from the First-Wave trial.  *Allen* ECF 351.  Plaintiffs opposed that request, arguing that the parties should instead "work up the next group of cases."  *Allen* ECF 356 at 3.   In November 2019, the District Court agreed with Plaintiffs and set pretrial deadlines for the Second-Wave Plaintiffs selected from *Allen* and *Trammell*.[5]  *Allen* ECF 358, 367.  In June 2020, Defendants moved for summary judgment in the Second-Wave cases on all negligence and strict-liability claims, even though the District Court had ruled for Plaintiffs on some of those claims in the First Wave.  *See* DSA115-40; *Allen* ECF 800, 809, 820.

The Second-Wave Plaintiffs did not oppose summary judgment for Defendants on the negligent failure-to-warn claims.  Plaintiffs instead stated: "Well aware of this Court's previous order, *see* [*Burton I*], Plaintiffs **concede** that

---

[5]  Defendants selected Tyann McHenry from *Allen* and Dijonae Trammell from *Trammell*, and Plaintiffs selected LaTonya Cannon and D'Angelo Thompson, both from *Allen*.  *Allen* ECF 341-1 ¶ 2.

they do not have surviving claims for negligent failure to warn."  DSA146 n.8 (emphasis added).

While the summary judgment motions were pending in the Second-Wave cases, Plaintiffs continued to push for coordinated litigation across all WLC cases. In October 2020—after both sides had filed their principal briefs with this Court in the First-Wave appeal—Plaintiffs filed a motion to "activate the next several Waves of lead paint cases."  DSA163.  They argued it was appropriate to increase the number of Plaintiffs per wave because issues "significantly overlap" between cases, "[b]andwidth becomes available … as precedent is established in prior Waves," and the amount of discovery can be "tailored to the sharpened bounds of the cases."  DSA162.  Indeed, in the Second-Wave cases, Plaintiffs sought partial summary judgment on two issues—the fungibility of WLCs and a successor-in-interest question—based on rulings in the First Wave.  *Allen* ECF 744, 750. Plaintiffs argued explicitly that, based on the "settled precedent from [the District] Court" in the First Wave cases, *Allen* ECF 962 at 1-2, Defendants should be precluded from "re-litigat[ing] … previously decided issue[s]" in the Second Wave.  *Allen* ECF 935 at 2.  The District Court granted Plaintiffs summary

judgment on both issues by reapplying its prior decisions from the First-Wave cases. *Allen* ECF 1061 at 4-6.[6]

In March 2021, the District Court granted Defendants partial summary judgment on the Second-Wave Plaintiffs' negligent failure-to-warn claims. The District Court again denied summary judgment on "ordinary negligence" and strict-liability failure-to-warn claims. *Allen v. Am. Cyanamid*, 527 F. Supp. 3d 982, 997, 999-1001 (E.D. Wis. 2021).

## VII. This Court corrected legal errors and reversed the judgments against Defendants in the First Wave.

One month after the District Court's summary judgment opinions in *Allen* and *Trammell*, this Court unanimously reversed the judgments for Plaintiffs in *Burton*, *Owens*, and *Sifuentes* on multiple grounds. The Court also directed entry of judgment as a matter of law for Sherwin-Williams in two respects.

First, this Court correctly held it was legal error to allow ordinary negligence claims without proof of a product defect. *Burton II*, 994 F.3d at 817-20. Surveying Wisconsin precedent, the Court found no authority that, on product-based claims, a manufacturer "can be negligent in the absence of a product defect." *Id*. at 819. Defendants' undisputed lack of a duty to warn for purposes of a negligent failure-

---

[6] Plaintiffs likewise opposed Defendants' motions *in limine* in the Second-Wave cases by asking the trial court to simply adopt its rulings from the First-Wave trial. *See, e.g.*, *Allen* ECF 624, 631, 634, 641, 652.

to-warn claim meant that Plaintiffs' only claim of defect—lack of a warning—failed as a matter of law, and "[w]ith no product defect, there can be no negligence liability." *Id*. at 820; *see also id*. at 819 ("The absence of a product defect forecloses recovery on the plaintiffs' negligence claims.").

Second, this Court applied Wisconsin law that "the duty to warn [is] the same for both" negligence and strict-liability claims. *Id.* at 822. Citing Wisconsin precedent dating back to at least 1983 (as well as precedent from this Court and other federal courts applying Wisconsin law), *Burton II* held that the District Court erred in allowing any strict-liability claim after concluding that Defendants did not have a duty to warn in negligence: "[T]he duty to warn … [is] the same for both types of claims because failure to warn is a type of product defect and defect is a shared requirement for negligence and strict liability claims." *Id.* The time period relevant for assessing duty was the time of Plaintiffs' alleged exposure to WLCs. *Id.* at 823. Accordingly, Defendants' lack of a duty to warn in the 1990s and 2000s compelled judgment as a matter of law against the First-Wave Plaintiffs on all claims. *Id.*

## VIII.  Defendants renewed their motions for summary judgment in all cases.

After this Court's decision in *Burton II*, Defendants on remand moved for summary judgment in all cases. *See Allen* ECF 1078, 1082, 1086, 1089. Defendants argued that, under *Burton II*, Plaintiffs could not recover absent proof of a warning

defect, and the District Court already had decided that Defendants did not have a duty to warn based on the undisputed historical record that gave Defendants "ample" "'reason to believe that those for whose use the chattel [was] supplied [would] realize its dangerous condition.'" *Burton I*, 334 F. Supp. 3d at 961 (quoting *Strasser*, 613 N.W.2d at 154-55). That holding applied to all cases through law of the case and issue preclusion, and—given the holdings of *Burton II*—entitled Defendants to judgment on all claims. *See Allen* ECF 1083.

In response, Plaintiffs sought additional discovery under Fed. R. Civ. P. 56(d). *Allen* ECF 1098. Although the First- and Second-Wave Plaintiffs had taken extensive discovery and ultimately did not contest that Defendants had no duty to warn in the 1990s and 2000s, Judge Adelman reopened discovery on that issue. *Allen* ECF 1103. But he warned Plaintiffs: "Given that the plaintiffs were injured in the 1990s or later, and that knowledge of the dangers of lead paint were well known by that time, it will be difficult for plaintiffs" to show that Defendants had a duty to warn under the objective standard in *Strasser*. *Id.* at 4.

After additional discovery, Plaintiffs in *Allen*, *Trammell*, *Gibson*, and *Valoe* opposed summary judgment. *See* DSA165-98. They offered no new evidence, instead providing declarations and expert reports that relied exclusively on decades-old information pre-dating Defendants' initial summary judgment motions by many years. *See, e.g.*, *Allen* ECF 1109-10, 1109-13. They also sought to

distinguish *Burton I* and *Allen*, asserting for the first time that those decisions were solely about the risk of WLC-containing **paint**, whereas their claims concerned household **dust** containing WLCs.  DSA173-77.

## IX.  The District Court granted summary judgment in all cases.

The District Court granted Defendants summary judgment in full.  SA1-36. *Burton I* held that, under *Strasser*, Defendants did not have a duty to warn in the 1990s and 2000s.  *Burton II* held that the lack of such a duty was dispositive of all claims.  Those holdings governed all Plaintiffs under settled law-of-the-case and issue-preclusion principles:  "when multiple plaintiffs join together [under Rule 20(a)] and bring a series of related claims before the same court using the same counsel and legal strategies, principles of efficiency and fairness require that the plaintiffs receive only one opportunity to litigate common questions of law or fact."  SA33.  Otherwise, Plaintiffs could "litigate common questions serially," which would give them an unfair advantage and "unnecessarily strain judicial resources and destroy the efficiencies that justified use of the common procedure in the first place."  SA33-34.

### A.  The District Court declined to reconsider its prior rulings in *Burton, Owens, Sifuentes, Allen,* and *Trammell.*

Judge Adelman found no justification to reconsider his prior rulings on the negligent failure-to-warn claims.  No manifest error of law or fact undermined the earlier summary judgment decisions against the First- and Second-Wave Plaintiffs,

the latter of whom had conceded that they had no surviving claims for negligent failure-to-warn under *Burton I*.  SA15-18.

The District Court rejected Plaintiffs' argument that the "hidden dangers of lead **dust** justify relief from the Court's summary judgment ruling."  SA15-16 (emphasis added).  Plaintiffs themselves had argued "[t]his litigation is and always has been focused on the hidden dangers of [WLC] specifically including those presented by invisible household dust."  SA16-17.  The District Court had previously held that:

> by the time the plaintiffs suffered their alleged injuries, the dangers of WLC and lead in general were well known and WLC manufacturers and sellers had ample reason to believe that persons residing in homes with older paint would be aware of the toxicity of the lead compounds possibly in their paint, **and of the various mechanisms by which that lead might be ingested**.

SA16 (emphasis in original).  Additionally, none of Plaintiffs' evidence qualified as "newly discovered" because it all could have been adduced in response to Defendants' original summary judgment motions.  SA16.  Thus, Judge Adelman declined to reconsider his determination "that the defendants were not required to warn consumers [in the 1990s and 2000s] about the dangers of [WLCs]— including the dangers of lead dust."  SA18.

**B.     The District Court applied law-of-the-case doctrine to all remaining Plaintiffs in *Allen* and *Trammell*.**

The District Court next held that its summary judgment ruling in the Second-Wave cases operated as law of the case that bound all Plaintiffs in *Allen* and *Trammell*, not just the four individuals from those cases chosen for the Second Wave. SA18. Judge Adelman reasoned that it was appropriate for the remaining *Allen* and *Trammell* Plaintiffs to be considered part of the same "case" as the Second-Wave Plaintiffs, because they had all chosen to join in the same actions together as plaintiffs. SA19-20. It also was fair to bind all the *Allen* and *Trammell* Plaintiffs to the Second-Wave summary judgment ruling because the purpose of allowing joinder in the first place was "to enable economies in litigation." SA19-20. The District Court considered all three exceptions to law of the case— exceptions that mirror the grounds for reconsideration the District Court had ruled to be inapplicable—and held that none applied. SA21-23.

**C.     The District Court applied issue preclusion to *Gibson* and *Valoe*.**

For the remaining Plaintiffs—three individuals named in *Valoe* and *Gibson*— the District Court granted summary judgment based on issue preclusion. SA25-30. Judge Adelman applied Wisconsin's two-part test and first held that issue preclusion could apply because all Plaintiffs shared a "sufficient identity of interest" given their joint prosecution of "claims against the same defendants under identical legal theories in front of the same court and the same judge, who

had been managing all cases jointly." SA28. The District Court then held that applying issue preclusion was fundamentally fair under Wisconsin precedent. SA30-32. Judge Adelman also noted his earlier decision dismissing Cyanamid. That November 2019 ruling "put all plaintiffs on notice"—well before the Second-Wave Plaintiffs' concession in their June 2020 summary judgment response—that "decisions on common questions of law or fact would have issue preclusive effect across all the lead-paint claims in the related actions"—just as Plaintiffs had requested. SA32.

### D.   The District Court denied Plaintiffs' request to alter or amend.

The District Court held that, with no duty to warn, all claims failed as a matter of law. The District Court recognized that *Burton II* is "binding on all plaintiffs as a matter of *stare decisis*" and precludes liability on all negligence and strict-liability claims because Defendants had no duty to warn in the 1990s and 2000s. SA17; *see also* SA23, SA33.

Plaintiffs moved for reconsideration under Rule 59(e), arguing that each Plaintiff should have an opportunity to relitigate the same question about what WLC manufacturers had reason to believe at the time of alleged exposure in the 1990s and 2000s. DSA243-78. The District Court denied the motion. SA45-73. Judge Adelman concluded by reiterating that "fairness requires that all litigants who were part of this coordinated litigation be treated the same. It would be

anomalous to answer common questions of law or fact differently for different plaintiffs pursuing identical claims within the same litigation." SA72. Because Plaintiffs already had multiple opportunities to litigate the alleged duty to warn, Defendants were entitled to judgment as a matter of law. This appeal followed.

### SUMMARY OF THE ARGUMENT

The only issues before this Court concern how the District Court applied the doctrines of reconsideration, law of the case, and issue preclusion in its March 2, 2022 summary judgment decision. Plaintiffs cannot demonstrate reversible error in any respect.

1.     The District Court did not abuse its discretion in denying reconsideration to the four Plaintiffs from *Allen* and *Trammell* who were part of the Second Wave. Those Plaintiffs asked the District Court to reverse its prior holding that Defendants did not have a duty to warn. But the Second-Wave Plaintiffs conceded they did not have surviving negligent failure-to-warn claims and did not oppose summary judgment on those claims. They cannot dispute that the District Court applied the correct legal standard, and they admit they have no newly discovered evidence. Plaintiffs' argument on appeal—that reconsideration should be granted so that they can "change litigation strategy"—violates settled principles. Opening Br. 19.

2.     The District Court did not abuse its discretion in applying law of the case to the remaining Plaintiffs in *Allen* and *Trammell*. Plaintiffs cannot meet any exception to law-of-the-case doctrine. The judgments against the remaining Plaintiffs in *Allen* and *Trammell* can also be affirmed on the alternative ground of issue preclusion.

3.      The District Court correctly precluded the three Plaintiffs in *Gibson* and *Valoe* from relitigating the legal question of duty on which Defendants had prevailed against every other Plaintiff.  Wisconsin law allows defensive use of issue preclusion against plaintiffs under more attenuated circumstances, and applying issue preclusion here is fundamentally fair—indeed, it is what Plaintiffs themselves requested in pursuing their coordinated litigation strategy.  This Court also can affirm the judgments in *Gibson* and *Valoe* on the alternative grounds of law of the case.

The District Court did exactly what Plaintiffs asked for after they filed these related cases:  It made a ruling on a threshold question of law, then applied that ruling to prevent "a second bite at the apple" and "relitigat[ion on] the same questions over and over."  SA34.  Plaintiffs cannot demonstrate any abuse of discretion in how the District Court applied its prior rulings pursuant to law-of-the-case and issue-preclusion principles.

Moreover, under the binding holdings of *Burton II*, the law of the case that Defendants did not have a duty to warn in the 1990s and 2000s compels judgment against all Plaintiffs on all claims.  As Plaintiffs acknowledge, the holdings in *Burton II* "required" the judgments below on their negligence and strict-liability claims.  Opening Br. 63.  The District Court did not err by following the binding precedent of *Burton II*.

There is no basis on which to question the District Court's prior rulings that Defendants did not have a duty to warn in the 1990s and 2000s. Plaintiffs never appealed that decision in *Burton I* and did not contest summary judgment in the Second-Wave. Those waivers preclude any appellate review of the decision at this stage. Additionally, Plaintiffs still do not meaningfully dispute either the *Strasser* standard for duty, or the historical evidence that the District Court applied in *Burton I*. Both procedurally and substantively, Plaintiffs are barred from asking this Court to remand so that they can relitigate a question that Judge Adelman already decided in Defendants' favor using precedent and evidence that Plaintiffs cannot contest.

Plaintiffs' collateral attack on *Burton II* also is improper. The holdings in that decision are binding law of the case that govern this litigation. Moreover, Plaintiffs provide no basis in Wisconsin law for overturning that precedent. The judgments should be affirmed.

ARGUMENT

## I.   The District Court correctly denied the Second-Wave Plaintiffs' motion for reconsideration.

The Second-Wave Plaintiffs comprise four individuals whom the parties deliberately selected as representative cases.  Plaintiffs proposed that each side pick two Plaintiffs from across all pending WLC cases who are "most representative of the cases in this litigation, as a whole."  DSA52.  Those representative Plaintiffs then **conceded** they had no surviving claim for negligent failure-to-warn under the court's "previous order" in *Burton I.*  SA15-18; DSA146 n.8.  Only when that concession resulted in dismissal of all claims under *Burton II* did the Second-Wave Plaintiffs seek reconsideration.  The District Court correctly denied their motion to reconsider based on their concession, the undisputed record, and the undisputed legal standard, and correctly granted Defendants summary judgment in full on all remaining claims under the binding precedent of *Burton II.*  SA17-18.  Plaintiffs cannot demonstrate any error in the order denying reconsideration.

### A.   Standard of Review.

This Court "review[s] a district court's ruling on a motion for reconsideration only for abuse of discretion" and "will not upset the … ruling absent a showing that 'no reasonable person could agree with the decision of the district court.'"  *United Cent. Bank v. KMWC 845, LLC*, 800 F.3d 307, 309 (7th Cir.

30

2015) (quoting *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 953 (7th Cir. 2013)). Plaintiffs cannot meet this standard for reversal.

### B. The District Court did not abuse its discretion because there was no basis for reconsideration.

The District Court was on firm ground in declining to reconsider its prior ruling that "defendants did not have a duty to warn in the 1990s and early 2000s about the dangers of [WLCs]." SA15. The Second-Wave Plaintiffs sought reconsideration of that decision under Fed. R. Civ. P. 54(b) or "any other Rule or theory" that might apply. DSA189 n.8. The power to reconsider is "to be used sparingly" and only "'to correct manifest errors or law or fact or to present newly discovered evidence.'" SA15 (quoting *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996)).

Plaintiffs' own concessions show that neither requirement was met here. The Second-Wave Plaintiffs conceded they had no surviving negligent failure-to-warn claim under *Burton I*. SA15-16. They did not contest that the District Court applied the correct standard under *Strasser* for assessing duty. SA57 ("[P]laintiffs do not dispute that I applied the correct legal standards"). Nor did Plaintiffs ever dispute the evidence on which the District Court relied in applying *Strasser*— namely, the decades of warnings from both former WLC manufacturers and federal, state, and local governments that gave WLC manufacturers "ample reason to believe" that consumers in the 1990s and 2000s were aware of the alleged

31

dangers. *Burton I*, 334 F. Supp. 3d at 961. Plaintiffs are not entitled to reconsideration when they previously conceded they did not have a surviving negligent failure-to-warn claim and that Judge Adelman applied the correct legal standard to undisputed evidence.

Plaintiffs also admit they did not present new evidence. Their brief acknowledges "this is not a case where [the] new evidence could not have been discovered prior to the first Wave 2 summary judgment proceeding." Opening Br. 38. This Court repeatedly has held that motions for reconsideration "cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced during the pendency of the summary judgment motion." *Caisse*, 90 F.3d at 1269; *Schering Corp. v. Ill. Antibiotics Co.*, 89 F.3d 357, 359 (7th Cir. 1996) (evidence "is not newly discovered" if "[i]t was there all along"); *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 252 (7th Cir. 1987) (reconsideration properly denied where purportedly new evidence was "in existence before the motion for summary judgment was even filed").[7]

Plaintiffs were aware of the potential consequences of not opposing summary judgment on their negligent failure-to-warn claims. Based on decades

---

[7] Plaintiffs claim Judge Adelman "recognized" this evidence "'would allow a reasonable jury to find that'" modern consumers were unaware of the alleged danger. Opening Br. 15. But Judge Adelman was merely summarizing Plaintiffs' argument and said "**plaintiffs contend** that this evidence would allow a reasonable jury to find" modern consumers were unaware. SA12 (emphasis added).

of clear Wisconsin precedent, including *Strasser*, Defendants had argued—
including at summary judgment in both the First and Second Waves—that all
claims in these cases required a duty to warn, the duty standard is the same in
negligence and strict-liability, and the lack of any duty compelled judgment in full.
*See* DSA115-40; *Burton* ECF 572, 987; *Allen* ECF 947. Yet when Defendants tried to
stay the Second-Wave cases pending the decision in *Burton II*, Plaintiffs opposed.
The representative Second-Wave Plaintiffs then knowingly made the "strategic
choice" to concede that their negligent failure-to-warn claims failed under *Burton I*
for lack of a duty. SA15-16, 17. The District Court did not abuse its discretion by
denying reconsideration in these circumstances.

### C.    Correcting a misapplication of Wisconsin law does not "change" Wisconsin law.

The Second-Wave Plaintiffs' only argument on appeal is the erroneous claim
that "this Court changed the rules" in *Burton II*. Opening Br. 42. Plaintiffs claim
this purported "change in the law" made old, readily available evidence "newly
**relevant**." *Id.* at 43 (emphasis added).

*Burton II* could not and did not change Wisconsin law. *Norgaard v. DePuy
Orthopaedics, Inc.*, 121 F.3d 1074, 1078 (7th Cir. 1997) ("[A] federal court cannot alter
or affect state law."). To the contrary, the Court upheld decades-old Wisconsin
precedent that governed Plaintiffs' claims, including the Wisconsin Supreme
Court's 2000 decision in *Strasser*—a seminal case that Plaintiffs' Opening Brief

33

never cites—articulating the duty standard for negligent failure-to-warn claims. *Burton II*, 994 F.3d at 822. This Court also applied multiple longstanding state and federal cases holding that the standards governing duty to warn under negligence and strict liability are the same under Wisconsin law. *Id.*

To be sure, this Court did reverse certain legal errors in the District Court's prior rulings. But courts of appeals do not "change … governing legal principles" by "appl[ying] long-established ones." *United States v. Arterbury*, 961 F.3d 1095, 1105 (10th Cir. 2020). In *Arterbury*, the government argued that rulings from a suppression hearing could not have preclusive effect, because the appellate court subsequently had reversed similar rulings by another district court. *Id.* at 1104. The court rejected that argument: "[A]pplying principles from established … cases" to reverse error does "not change the law." *Id.* at 1105.[8]

That is what happened here. *Burton II* cited and applied longstanding Wisconsin precedent, as well as multiple "courts applying Wisconsin law," to support each of its holdings on negligence and strict-liability claims. *Burton II*, 994 F.3d at 822. That was not an intervening change in the controlling state law

---

[8] The sole case Plaintiffs cite is inapposite. Opening Br. 44 (citing *Cameo Convalescent Center, Inc. v. Percy*, 800 F.2d 108 (7th Cir. 1986)). *Cameo* did not involve a motion for reconsideration. Rather, this Court rejected the argument that denial of defendants' motion to dismiss precluded later summary judgment. 800 F.2d at 109-10. In the interim, the U.S. Supreme Court had changed the "controlling authority" that governed plaintiffs' federal claims. *Id.* at 110.

governing Plaintiffs' claims.  It was the correction of incorrect rulings that wrongly allowed Plaintiffs' "ordinary negligence" and strict-liability failure-to-warn claims to proceed to trial.  *Id*.  The Second-Wave Plaintiffs' decision to rely on those rulings instead of opposing summary judgment was at their own peril.  *Schering*, 89 F.3d at 358 (party's choice to accept and rely on trial-court order before first appeal barred them from later disputing that order).

### D.    Reconsideration is not a vehicle for changing legal strategy.

Plaintiffs are candid about their real reason for seeking reconsideration: "They should have been given an opportunity to change litigation strategy." Opening Br. 19.  Their choice not to oppose summary judgment on the negligent failure-to-warn claim, they argue, was a "logical strategic decision" to focus instead on other claims.  *Id*. at 43.  They now ask for relief from the consequences of that decision, asking that the standards for reconsideration not be applied to "foreclose [a] change in legal strategy."  *Id*. at 44.

Courts have long rejected exactly what Plaintiffs propose.  The "incorrect assessment of the consequences" of a "deliberate, strategic choice" does not warrant reconsideration.  *Eskridge v. Cook Cty.*, 577 F.3d 806, 810 (7th Cir. 2009); *see Ackermann v. United States*, 340 U.S. 193, 198 (1950) ("[F]ree, calculated, deliberate choices are not to be relieved from," even when "hindsight" shows they were misguided); *DeBruyne v. Equitable Life Assurance Soc.*, 920 F.2d 457, 471 (7th Cir.

1990) (district courts are "not obliged to rescue plaintiffs from the consequences of their dilatory conduct, and neither are we").

Thus, a party's "failure to submit … facts to the court during summary judgment foreclose[s] its motion for reconsideration." *Caisse*, 90 F.3d at 1270. That principle is all the more important when the failure was "a matter of strategy." *Id.* A litigant "seeking to defeat a motion for summary judgment is required to wheel out all its artillery to defeat it," and "[b]elated factual or legal attacks are viewed with great suspicion," while "intentionally withholding essential facts for later use on reconsideration is flatly prohibited." *Id.* (internal marks and citations omitted); *see Cincinnati Life*, 722 F.3d at 954 (litigants may not use a motion for reconsideration to revisit alternative arguments not previously made, "whether for reasons of strategy or mere oversight").

Plaintiffs' argument offends every principle of efficiency and finality that governs reconsideration. *See Daza*, 2 F.4th at 683 (noting the "logjam that would develop if people could take second, third, or nth bites at the apple"). At the very least, the District Court did not abuse its discretion by applying *Caisse*. SA16-17. At the time the parties briefed summary judgment in the Second-Wave cases, Plaintiffs were well aware of the no-duty ruling in *Burton I*, the issue-preclusion dismissal of Cyanamid in *Allen*, Defendants' positions on Wisconsin law, and the pending appeal that led to *Burton II*. They had ample opportunity to argue why

36

the District Court should reach a different outcome on any negligent failure-to-warn claim. They strategically chose not to do so. The District Court did not abuse its discretion in denying leave to revisit that knowing, strategic decision through a motion for reconsideration.

## II.     The District Court correctly applied law of the case to the remaining Plaintiffs in *Allen* and *Trammell.*

The District Court properly entered judgment against all remaining Plaintiffs in *Allen* and *Trammell*. Each of those approximately 150 individuals chose to join the same two cases from which the parties selected the representative Second-Wave Plaintiffs. The District Court thus applied to all remaining *Allen* and *Trammell* Plaintiffs the law of the case that Defendants had no duty to warn in the 1990s and 2000s. SA18-23. Under the binding precedent in *Burton II*, that holding compelled summary judgment for Defendants on all claims. Plaintiffs' arguments provide no basis for reversal. Opening Br. 35-40.

### A.     Standard of Review.

This Court reviews a district court's application of law of the case for abuse of discretion. *See United States v. City of Chi.*, 853 F.2d 572, 577 (7th Cir. 1988); *Velsicol Chem. Corp. v. Monsanto Co.*, 579 F.2d 1038, 1050 (7th Cir. 1978). Abusing discretion requires "'something more than our belief that we would have acted differently if placed in the circumstance confronting the district judge. The … decision must strike us as fundamentally wrong for an abuse of discretion to

occur.'" *Williams v. Chicago Bd. of Educ.*, 155 F.3d 853, 857 (7th Cir. 1998) (citations omitted).

### B. Law of the case applies to all Plaintiffs in *Allen* and *Trammell*.

The District Court properly found that its earlier summary judgment ruling in *Allen* and *Trammell* binds all Plaintiffs in those two actions as law of the case. Under this Court's precedent, the "law of the case doctrine generally binds a court to its own previous decision on issues arising earlier in the litigation as well as to decisions entered by a higher court earlier in the litigation." *Waid v. Merrill Area Pub. Sch.*, 130 F.3d 1268, 1272 (7th Cir. 1997); *City of Chi.*, 853 F.2d at 576 (law of the case "requires district courts … to adhere to their own decisions made at an earlier stage of the litigation").

The District Court's 2021 summary judgment decision "was rendered under the caption for each of" the *Allen* and *Trammell* actions—the actions in which the Second-Wave Plaintiffs had joined themselves as parties. SA18. That decision became the law of those cases and necessarily bound each Plaintiff named in those actions. Those individuals elected to join their claims under Rule 20, which allowed them to "join in one action as plaintiffs." Fed. R. Civ. P. 20(a)(1). Thus, as Judge Adelman held, "all plaintiffs in *Allen* are formally parties to the same case, as are all plaintiffs in *Trammell*." SA19; *see Black's Law Dictionary* (11th ed. 2019) (defining "case" as synonymous with "action").

The District Court also considered it "fair to bind the remaining plaintiffs in *Allen* and *Trammell* to the prior rulings [it] made on common questions of law or fact." SA19. From the outset of their respective cases, the *Allen* and *Trammell* Plaintiffs argued that "numerous common questions of law and fact" supported the joinder of their claims within a single action. *Allen* ECF 1 at 3; *Trammell* ECF 1 at 1. The threshold legal question of duty for a warning claim is one such question and, under Wisconsin law, it depends on objective evidence about what a reasonable manufacturer could believe. *See Burton I*, 334 F. Supp. 3d at 961 (applying *Strasser*). There is no plaintiff-specific or case-by-case inquiry to be had on that point. And, as law of the case, that holding binds all Plaintiffs in *Allen* and *Trammell*. *See* SA19 (noting that the purpose of permitting Rule 20 joinder was to enable economies in litigation on common questions).

### C.  Plaintiffs' argument that the Second-Wave Plaintiffs were "effectively severed" is both untimely and wrong.

#### 1.  Plaintiffs waived their "effective severance" argument.

On appeal, the *Allen* and *Trammell* Plaintiffs abandon their prior position in favor of a new argument not presented to Judge Adelman. Below, Plaintiffs argued that the law of the case cannot apply across individuals joined in a single action because "each Plaintiff is bringing individual claims and cases." DSA192; *see also* DSA256-61 (disputing that the *Allen* or *Trammell* Plaintiffs were ever "in the same case"). The District Court rightfully rejected that theory. SA19.

Plaintiffs now abandon that argument and assert on appeal a new "effective severance" theory.  Opening Br. 35-37.  This new argument contends that when the District Court ordered discovery and a trial on the claims of the four Second-Wave Plaintiffs, that was "analogous" to a severance order under Federal Rule of Civil Procedure 21.  *Id*. at 35.

This new argument comes too late and is wrong.  "Arguments raised for the first time on appeal are deemed waived."  *Mahran v. Advoc. Christ Med. Ctr.*, 12 F.4th 708, 713 (7th Cir. 2021); *see Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 841 (7th Cir. 2010) ("[A] party has waived the ability to make a specific argument for the first time on appeal when the party failed to present that specific argument to the district court.").  Plaintiffs' waiver here is particularly significant, because their new argument turns on specious interpretations of the District Court's orders.  If Plaintiffs had any question about the intent of a CMO, they should have raised that with the court that issued the order.  They did not, and cannot now make these arguments on appeal.  *Mahran*, 12 F.4th at 713.

### 2.    Plaintiffs ignore the record.

There is no basis for Plaintiffs' "effective severance" claim.  They assert that the District Court "clearly" severed the Second-Wave Plaintiffs' claims from *Allen* and *Trammell* when it entered its April 2016 CMO, which Plaintiffs call "analogous to a severance under Rule 21."  Opening Br. 36-37.  But the CMO—which was

captioned and filed identically in all cases—does not cite Rule 21, say anything about "severance," or sever anything, either by rule or by effect.  *See* DSA56-61. Moreover, the record shows exactly why the District Court entered that order: because Plaintiffs argued that the *Allen* Plaintiffs should **not** be severed, and that rulings on common legal issues **should** be applied across this coordinated litigation.

In 2015, Defendants requested that the claims of each Plaintiff in *Allen* be dismissed or severed into separate cases under Rule 21.  *Allen* ECF 82.  Plaintiffs objected and responded that they properly joined these claims in a single action under Rule 20(a) because they all raised common questions of law or fact.  DSA13-14.  The District Court agreed and denied severance because that would "make the management of the matter more unwieldy."  DSA42.  While the District Court "recognize[d] that individual discovery and separate trials [would] likely be required," it believed "these things can be accomplished **without the disadvantages attendant to dismissal or severance.**"  *Id.* (emphasis added).  The District Court did not "effectively sever" anything; at Plaintiffs' request, it **denied** a motion to sever in *Allen*.

Plaintiffs then, in a February 2016 motion captioned and filed identically in all cases, successfully asked the District Court to coordinate litigation on threshold legal issues across cases.  DSA47-55.  Plaintiffs argued that "[t]he best route to a

timely and efficient resolution of these cases is to implement a coordinated discovery effort in a limited number of cases, and then to conduct early bellwether trials on a rolling basis." DSA50. This would "allow for coordinated motions practice on issues present in all of the cases" so that "threshold legal issues" could be "dealt with once, not on a case-by-case basis." DSA53-54. Plaintiffs "propose[d] the creation of a Bellwether Pool, consisting of eight (8) additional cases to be worked up and tried after" the First Wave. DSA52. To litigate all the claims as individual cases, Plaintiffs argued, would be "simply unmanageable." DSA50. The District Court then entered the CMO, substantially adopting Plaintiffs' proposal. DSA56-61. The procedural history refutes Plaintiffs' "effective severance" argument.

Plaintiffs also do "not cite any law explaining when [this Court] should recognize an 'effective' severance if the district court did not state that it was severing a claim under Rule 21." *U.S. Filter/JWI, Inc. v. J-Parts, L.L.C.*, 733 F. App'x 804, 806 (6th Cir. 2018) (rejecting similar "effective severance" argument). Plaintiffs rely exclusively on *Edmonds v. Smith*, 922 F.3d 737 (6th Cir. 2019), for the proposition that "once the district court separated the cases of the Wave 2 Plaintiffs from the claims of the remaining Plaintiffs … subsequent rulings in Wave 2 were no longer law of the case for" *Allen* and *Trammell*. Opening Br. 37. *Edmonds* neither refers to severance nor cites Rule 21, and it did not involve plaintiffs "separated"

by a district court. Rather, two criminal defendants brought independent habeas actions. *Edmonds*, 922 F.3d at 739. The Sixth Circuit held that law of the case in one habeas action could not apply to the other because "different habeas actions brought by different petitioners are different cases." *Id*.

Unlike the petitioners in *Edmonds*, all Plaintiffs named in *Allen* were always party to the same action. Likewise for the *Trammell* plaintiffs. They purposefully joined their individual claims together, and they jointly and successfully resisted Defendants' efforts to sever. They are all bound by the law of the case in those actions.

### D.   Plaintiffs cannot invoke any exception to law of the case.

Plaintiffs also fail to identify any abuse of discretion in the District Court's decision to uphold the law of the case. Only three "unusual" reasons might justify abandoning law of the case: (1) substantial new evidence is introduced after the first review; (2) an intervening change in the controlling law has occurred since the first review; or (3) the original decision was "clearly erroneous." *Key v. Sullivan*, 925 F.2d 1056, 1061-62 (7th Cir. 1991). Plaintiffs—tellingly—do not invoke the third exception. The District Court properly exercised its discretion in rejecting the other two. SA18-23.

First, Plaintiffs claim that *Burton II* constituted "an 'intervening change in the law.'" Opening Br. 39. But Plaintiffs concede, as they must, that *Burton II* did

not "directly affect[]" the District Court's analysis of their negligent failure-to-warn claims. *Id*. That precludes any argument there was a change in the governing law. *See Arterbury*, 961 F.3d at 1105. Both before and after *Burton II*, the Wisconsin Supreme Court's decision in *Strasser* was and continues to be the controlling authority that governs the relevant duty-to-warn analysis in Wisconsin. *See* 994 F.3d at 822. Nothing about that analysis changed between *Burton I* and *Burton II*, and nothing about that analysis changed after *Burton II*.

Reversing the District Court's earlier rulings about "ordinary negligence" and strict-liability claims also did not change the Wisconsin tort law governing Plaintiffs' claims. *See supra* § I.C. Applying the "change of law" exception under these circumstances would eviscerate law-of-the-case doctrine. Some "change in law" would necessarily occur whenever a judgment is reversed, and disappointed parties would then be free upon remand to reopen any otherwise-settled issues. That is inconsistent with foundational principles of finality and judicial efficiency. *Peoples v. United States*, 403 F.3d 844, 846 (7th Cir. 2005) ("The twin goals of this doctrine are to ensure that the parties marshal all of their facts and arguments so that a dispute may be resolved in one pass, and to conserve judicial resources."); *see also* 18B Fed. Prac. & Proc. Juris. § 4478 (3d ed.) (purported changes in law should occur "**outside the confines of the particular case**" (emphasis added)).

Second, the *Allen* and *Trammell* Plaintiffs cannot meet the "new evidence" requirement for the same reason as the Second-Wave Plaintiffs. *See supra* §§ I.B., I.D. The District Court correctly rejected this argument, because the purportedly "new" evidence could "have [been] adduced in opposition to the original motions for summary judgment." SA21. Plaintiffs do not contend otherwise and concede this is not a case where evidence was unavailable prior to summary judgment. Opening Br. 38.

Next, the *Allen* and *Trammell* Plaintiffs make a new due-process argument on appeal that, to the extent they were not included in the Second Wave, they had no opportunity to adduce any evidence one way or another. Opening Br. 35, 38. Plaintiffs never argued below that applying law of the case would violate due process. *See* DSA192-93; DSA254-65. That argument is waived. *Fednav*, 624 F.3d at 841.

Moreover, Plaintiffs again ignore their own role in asking the District Court for coordinated discovery and to apply rulings on "threshold legal issues" across these coordinated cases. DSA53-54. They opposed severance so that common threshold questions of law—such as duty to warn—would be subject to common discovery and motion practice, and would be decided once, not on a case-by-case basis. *See supra* at 10-13, 40-42. Plaintiffs cannot now claim that the case-management decisions they requested are grounds for reversal. *See Essex Ins. Co.*

*v. Galilee Med. Ctr. S.C.*, 815 F.3d 319, 322 n.3 (7th Cir. 2016) (litigants may not invite error that they argue on appeal entitles them to relief).

Plaintiffs cite no authority that the law of a case does not apply equally to all litigants within that case.[9] As the District Court noted, such a rule would invite exactly the kind of inefficiency and gamesmanship that law of the case prevents: "The fact that the earlier plaintiffs did not prevail does not justify giving the later plaintiffs a second bite at the apple when, all along, the plaintiffs have been aligned in interest and pursuing a common legal strategy through the same counsel." SA34; *see also* SA72 ("I conclude that fairness requires that all litigants who were part of this coordinated litigation be treated the same. It would be anomalous to answer common questions of law or fact differently for different plaintiffs pursuing identical claims within the same litigation."). In the District Court's view—based on its decade of experience administrating these "tightly coordinated" cases, SA29 n.12—all Plaintiffs received the same "full and fair round of litigation" and the same "opportunity to litigate common questions of law or fact." SA33. That view is entitled to "special deference" in light of Judge Adelman's many "years of experience" overseeing these complex cases. *Hutto v. Finney*, 437 U.S. 678, 688 (1978). The District Court did not abuse its discretion in

---

[9] Plaintiffs cite *Paige K.B. ex rel. Peterson v. Steven G.H.*, 594 N.W.2d 370, 378 (Wis. 1999), and *Edmonds*, 922 F.3d at 739, Opening Br. 38, but neither concerns the application of federal law-of-the-case principles to all litigants joined in the same litigation.

upholding the principles of fairness and efficiency at the heart of law-of-the-case doctrine.  *See* Moore's Fed. Prac. § 134.20 (law of the case "promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues" (marks and citation omitted)).

### E.     Plaintiffs waived any argument regarding the District Court's alternative holding for judgment in *Allen* and *Trammell*.

The District Court held that issue preclusion provides an additional, alternative basis for summary judgment against the remaining *Allen* and *Trammell* Plaintiffs.  SA61-62.  Those Plaintiffs do not meaningfully present any argument to the contrary.  That failure separately requires affirmance.  This Court holds that "conclusory remark[s]" and "[u]ndeveloped arguments are waived on appeal." *Vesey v. Envoy Air, Inc.*, 999 F.3d 456, 464 (7th Cir. 2021) (quoting *United States v. Collins*, 604 F.3d 481, 487 n.2 (7th Cir. 2010)).  A party's failure to challenge a district court's alternative grounds for dismissing his claims likewise waives that issue on appeal.  *Williams v. Leach*, 938 F.2d 769, 772-73 (7th Cir. 1991).

Plaintiffs acknowledge that Judge Adelman alternatively ruled that issue preclusion also foreclosed the remaining *Allen* and *Trammell* Plaintiffs from relitigating his earlier summary judgment rulings.  Opening Br. 39.  Plaintiffs' only argument on this point is the conclusory assertion that issue preclusion does not apply here "[f]or the same reasons" that it does not apply to the *Gibson* and *Valoe* Plaintiffs.  *Id.*

But the argument that the *Gibson* and *Valoe* Plaintiffs assert is inapplicable to *Allen* and *Trammell*. The *Gibson* and *Valoe* Plaintiffs argue they cannot be bound by issue preclusion because they were "nonparty-plaintiffs" who supposedly did not control or participate in *Allen* and *Trammell*. Opening Br. 29; *see also infra* § III. All of the *Allen* and *Trammell* Plaintiffs, by contrast—including the Second-Wave Plaintiffs—**were parties to the same actions** and **did** participate in those cases through their shared counsel. Plaintiffs' cursory gesture toward arguments offered on behalf of the *Gibson* and *Valoe* Plaintiffs does not address why issue preclusion purportedly cannot apply in *Allen* and *Trammell*. As Judge Adelman held, issue preclusion does apply in the latter cases, and this Court can affirm on that alternative basis. SA61-62.

## III. Issue preclusion applies in *Gibson* and *Valoe*.

Finally, the District Court properly precluded the three Plaintiffs in *Gibson* and *Valoe* from relitigating the issues already decided in this litigation. SA24-33; SA62-72. Plaintiffs' arguments to the contrary ignore the circumstances that compelled the holding below. *See* Opening Br. 21-35.

### A. Standard of Review.

In a diversity case, "federal law incorporates the rules of preclusion applied by the State in which the rendering court sits." *Taylor v. Sturgell*, 553 U.S. 880, 891 n.4 (2008). Wisconsin's two-step analysis for issue preclusion first considers

whether issue preclusion can apply as a matter of law, and then assesses various factors to ensure issue preclusion is fundamentally fair. *In re Estate of Rille ex rel. Rille*, 728 N.W.2d 693, 702 (2007).

Trial courts have "broad discretion" in deciding whether issue preclusion applies in the circumstances of each case. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 331 (1979). While any embedded question of law is reviewed de novo, the trial court's underlying analysis of, for instance, the shared interests among litigants "will be upheld unless clearly erroneous." *Donovan v. Est. of Fitzsimmons*, 778 F.2d 298, 301 (7th Cir. 1985); *see also Rille*, 728 N.W.2d at 703 ("[The] final decision on whether to apply the doctrine of issue preclusion [is reviewed] under the exercise of discretion standard," and will be upheld where the trial court "applie[d] the proper standard of law and, using a demonstrated rational process, reache[d] a conclusion that a reasonable court could reach.").

**B.     Issue preclusion can and does apply in these coordinated cases, as Plaintiffs expected it would.**

Issue preclusion exists to block relitigation of decided questions in exactly the type of circumstances that exist here. Plaintiffs themselves successfully moved the District Court to sequence "waves" comprising Plaintiffs "most representative of the cases in this litigation" so that "threshold legal issues" common to all Plaintiffs' claims could "be dealt with once." DSA53-54; DSA1-3; DSA56-61. They successfully moved to consolidate the First-Wave cases so that resolution of

"common questions" could provide a "means to resolve the numerous [WLC] cases now pending before the Court." DSA86, DSA88. And they expected disputed issues to narrow over time "as precedent is established in prior Waves," binding all parties in all cases. DSA162.

The District Court not only adopted these case management proposals in all cases, it applied prior rulings across all cases—**including at Plaintiffs' request.** *See supra* at 18. Plaintiffs also did not appeal when the District Court dismissed Cyanamid from all cases through issue preclusion based on rulings in the First-Wave cases. *See supra* at 16; SA28-29. Even now, Plaintiffs do not claim that was error.[10] Similarly, the representative Second-Wave Plaintiffs in *Allen* and *Trammell* conceded that they had no "surviving" claims for negligent failure-to-warn because of the District Court's "previous order" in the First-Wave cases. DSA146 n.8. Their concession necessarily acknowledged that decisions on common issues in one WLC case could apply across all WLC cases that Judge Adelman was jointly

---

[10]  Plaintiffs argue that the global dismissal of Cyanamid was "entirely different," because the trial court had consolidated Cyanamid's motions to dismiss across all cases. Opening Br. 29 n.22 (citing App-750-52). But that consolidation order applied only to the specific motions filed in **2015**. *Allen* ECF 127; DSA30. When the jurisdictional question arose again **four years later**, Plaintiffs argued that Cyanamid "did not move for consolidation" of renewed motions on personal jurisdiction, and that the trial court had "expressed no intention to consolidate any other pending cases with the *Burton* trial group for purposes of deciding personal jurisdiction issues." DSA95-96. The global dismissal of Cyanamid never referenced consolidation across all cases, but applied issue preclusion to the *Allen*, *Trammell*, *Gibson*, and *Valoe* Plaintiffs, because "[t]he plaintiffs' interest in the present cases is exactly the same." DSA110.

administering.  Plaintiffs changed position only after *Burton II* held that the District Court's resolution of the common duty-to-warn question was dispositive of all claims.

In these circumstances, any claim that issue preclusion cannot apply as a matter of law has no merit.  Wisconsin courts have approved the use of defensive issue preclusion in circumstances less connected than these.  *See, e.g.*, *Jensen v. Milwaukee Mut. Ins. Co.*, 554 N.W.2d 232, 234 (Wis. Ct. App. 1996).  *Jensen* did not involve "tightly coordinated" cases being jointly administered by a single judge overseeing a pool of plaintiffs, all jointly represented by the same counsel and alleging identical claims, from which representatives were chosen expressly for resolution of common, threshold questions.  SA29 n.12.  Yet *Jensen* still applied issue preclusion to bar relitigation of an issue on which the defendant had prevailed in an earlier suit filed by a different plaintiff.  554 N.W.2d at 236.  The central issue in *Jensen* was a driver's alleged negligence in a two-car accident.  After the second-car driver failed to prove negligence, the court held that the second-car passenger was precluded from relitigating that same issue of negligence in a later case.  *Id.*  The passenger had an "obvious interest" and "adequate opportunity and incentive" for negligence to be fully litigated in the first case.  *Id*. at 235.  That both plaintiffs retained the same counsel also demonstrated they both approved of the "tactics and strategy" deployed.  *Id.*  Issue preclusion could apply because the two

plaintiffs had "sufficient identity of interest." *Id.* at 236; *see Salsbury v. Miller*, 578 N.W.2d 209 (Wis. Ct. App. 1998) (table) (all participants in a benefits plan were bound by a prior court's interpretation of that plan).[11]

*Gibson* and *Valoe* are even more susceptible to issue preclusion than the plaintiffs in *Jensen*. Having "jointly administered" these cases for many years, SA5, the District Court held that all Plaintiffs had joined their identical claims in the same "tightly coordinated" litigation, and therefore had the same "full and fair" opportunity and interests to litigate the alleged duty to warn. SA29 n.12, SA33. Plaintiffs' own filings in the trial court demonstrate how they "pool[ed]" their cases together specifically so that common, threshold issues would be decided "once." DSA52, DSA54.

There also is "identity of interests" among all Plaintiffs on the duty issue that the District Court previously decided. SA28-29. An essential element of all Plaintiffs' claims in this litigation is whether Defendants had a duty to warn in the 1990s and 2000s. *See Burton II*, 994 F.3d at 818-20, 822. As the District Court recognized, that is not a Plaintiff-dependent question. *Burton* ECF 1118 at 4.

---

[11] Plaintiffs suggest it is not "clear" that *Jensen* is good law and cite other Wisconsin cases with materially different facts. Opening Br. 27. But none of Plaintiffs' cited cases is analogous, and the Wisconsin Supreme Court has endorsed *Jensen* as valid precedent. *See* SA64 (rejecting Plaintiffs' argument); *see also Affiliated FM Ins. Co. v. Trane Co.*, 831 F.2d 153, 155 (7th Cir. 1987) (this Court can apply "state law as declared … by the intermediate appellate court of the state").

Under Wisconsin law, that question depends on whether a **manufacturer** had any reason to believe at the time of exposure that "'those for whose use the chattel is supplied will realize its dangerous condition.'" *Burton II*, 994 F.3d at 822 (quoting *Strasser*). The District Court decided that objective question based on undisputed, publicly available information demonstrating decades of warning labels and public education campaigns, *see Allen*, 527 F. Supp. 3d at 997; *Burton I*, 334 F. Supp. 3d at 961, then applied that decision in *Gibson* and *Valoe* under issue-preclusion principles. Plaintiffs cannot show that was "clearly erroneous." *Donovan*, 778 F.2d at 301.

### C.    Plaintiffs do not dispute the District Court's reasoning.

On appeal, Plaintiffs never contest the District Court's analysis. Their brief includes a series of case cites and lengthy quotes, Opening Br. 24-28, but that is not actual argument about the circumstances specific to this litigation. Plaintiffs do not and cannot disagree that they "waged a coordinated campaign"; prosecuted identical claims "against the same defendants under identical legal theories in front of the same court and the same judge"; and approved of the "tightly coordinated" tactics and strategy of their shared counsel. SA5, SA28, SA29 n.12. They do not explain how the interests of the three Plaintiffs in *Gibson* and *Valoe* to prove a duty are different in any way from those of the approximately 150 other

Plaintiffs. Nor do they contend that the objective question of what manufacturers had reason to believe in the 1990s and 2000s might differ between Plaintiffs.

The only argument Plaintiffs make is that they allegedly were exposed to WLCs in "separate incidents involving different WLC in different residences at different times." Opening Br. 28. But under Wisconsin's objective duty-to-warn standard, the circumstances of their individual exposures are irrelevant to whether Defendants had a duty in the 1990s and 2000s, when all of Plaintiffs' alleged exposures occurred. Plaintiffs' own individual circumstances relate only to questions like injury and specific causation. Duty is a question of law decided under an objective standard based on historical evidence about what manufacturers had reason to believe. *Burton II*, 994 F.3d at 822 (citing *Strasser*). Plaintiffs do not deny they all had the exact same interest in establishing a duty to support their warning claims, and their omission waives the point. *Williams*, 938 F.2d at 772-73.

Plaintiffs' argument that "shared counsel, alone, does not create privity" also is irrelevant. Opening Br. 28. No one has argued differently. Judge Adelman was explicit that "representation by the same counsel was **only one of the reasons** I gave for finding an identity of interest." SA64 (emphasis added). The relevance of shared counsel is that it demonstrates contemporaneous approval by all Plaintiffs of their joint counsel's strategic decision-making, including their

decision not to file a cross-appeal following *Burton I* and their decision not to oppose summary judgment on the negligent failure-to-warn claims in *Allen* and *Trammell*.  SA28.

Plaintiffs cite no authority under Wisconsin law that issue preclusion cannot apply between two different case numbers.  Nor do they cite any case with remotely the same circumstances as are present here.  Plaintiffs' cases apply different legal standards from other jurisdictions.  *E.g.*, *Taylor*, 553 U.S. at 904 ("federal common law" governs "federal-court judgment" in "federal-question cases").  Some concern formalistic claim preclusion rather than narrower and more flexible issue preclusion.  *E.g.*, *Tice v. Am. Airlines*, 162 F.3d 966 (7th Cir. 1998) (considering claim preclusion of federal statutory claims under federal law).  Some involved large gaps of time between the relevant cases—*e.g.*, *Oneida* considered a 90-year span—or situations in which later parties had no "actual or constructive notice" of the earlier suit, *e.g.*, *Gonzalez*, 27 F.3d 751 (1st Cir. 1994).  Many concerned criminal actions that implicate stricter standards.  *E.g.*, *Paige K.B.*, 594 N.W.2d at 379.  And all involved demonstrably disparate interests with no representation or coordination between the parties.  *E.g.*, *Mayonia*, 551 N.W.2d 31 (Wis. Ct. App. 1996) (children have different interests in determining paternity—e.g., inheritance, custody rights, medical and genealogical history, and paternal bonds—than a state

attorney); *Hebron*, 723 F. Supp. 416 (D.N.D. 1989) (plaintiffs brought independent cases at separate times with no coordination).

By contrast, these Plaintiffs "essentially agreed to litigate their claims as part of a conglomeration of related cases being prosecuted by the same counsel in front of the same court and judge in a tightly coordinated manner."  SA29 n.12.  The District Court was well within its "broad discretion" to hold that these circumstances permitted issue preclusion.  *Parklane*, 439 U.S. at 331.  That discretionary finding is entitled to "special deference" given the District Court's long-running oversight of these cases, *Hutto*, 437 U.S. at 688, and it was properly exercised here.  *See, e.g.*, *Donovan*, 778 F.2d at 301 (issue preclusion appropriate across simultaneous and coordinated cases); *Cent. Transp., Inc. v. Four Phase Sys., Inc.*, 936 F.2d 256, 260 (6th Cir. 1991) (same).

### D.   Applying issue preclusion was fundamentally fair.

The second step of Wisconsin's issue-preclusion doctrine assesses the fundamental fairness of precluding relitigation on previously adjudicated issues. *Jensen*, 554 N.W.2d at 235.  Of the five factors that Wisconsin courts have identified as relevant, Plaintiffs do not dispute three of them—all of which the District Court resolved in favor of applying issue preclusion.  *See* Opening Br. 32 & n.23; *see also* SA29-33, SA65-72.  Plaintiffs' silence on a majority of the factors proves the District Court did not abuse its discretion in assessing fairness.  *See Michelle T. v. Crozier*,

495 N.W.2d 327, 330-31 (Wis. 1993) (Wisconsin eschews "[f]ormalistic requirements" in favor of "a looser, equities-based" issue preclusion).

The two factors Plaintiffs do contest do not render issue preclusion fundamentally unfair. The first concerns whether the three *Valoe* and *Gibson* Plaintiffs could have obtained review of the District Court's prior no-duty rulings. *Jensen*, 554 N.W.2d at 235. Plaintiffs acknowledge Judge Adelman construed this factor in their favor, and assert only that the District Court should have weighed this factor more "heavily." Opening Br. 32-33. Judge Adelman properly did not because all "plaintiffs were aligned in interest and had been coordinating their litigation efforts, and so if plaintiffs' counsel saw grounds for appealing [the no-duty] ruling, an appeal would have been filed." SA65-66. Plaintiffs do not contest that reasoning.

The *Gibson* and *Valoe* Plaintiffs had been "put … on notice" that adverse rulings in earlier waves could impact their interests. SA32. They previously had requested that common legal questions be decided once across all cases. *See Valoe* ECF 136. If any Plaintiff thought their interests were not being adequately represented in *Burton*, they could have sought to intervene. *Douglas v. Western Union Co.*, 955 F.3d 662, 665 (7th Cir. 2020) (individuals whose interests are affected by a ruling may "seek intervention for purposes of appeal" (marks and citation omitted)). None did, and there is no reason to second-guess how the District Court

57

weighed this factor. *See also Jensen*, 554 N.W.2d at 235 (applying issue preclusion despite first factor).

The second factor Plaintiffs dispute is whether there was any intervening change in the law. Opening Br. 33-34. As set forth above, *Burton II* did not change the Wisconsin law governing Plaintiffs' claims. *Supra* § I.C. Plaintiffs advocated erroneous legal positions in the District Court. This Court corrected those errors on appeal. Plaintiffs cannot manufacture a "change in law" by leading the District Court to legal error with arguments irreconcilable with Wisconsin precedent. *Essex*, 815 F.3d at 322 n.3. As this Court explained, for at least forty years courts applying Wisconsin law "have treated [the duty-to-warn for negligence and strict-liability claims] as materially identical." *Burton II*, 994 F.3d at 822. Plaintiffs may have sought to avoid that precedent, but cannot claim surprise that it applied.

**E.    Law of the case independently warrants judgment for Defendants.**

Judge Adelman recognized that law of the case might also warrant judgment against the three *Gibson* and *Valoe* Plaintiffs. SA13 n.6. This Court can affirm on that basis as well. *See Samuelson v. LaPorte Community School Corp.*, 526 F.3d 1046, 1051 (7th Cir. 2008) ("We may affirm summary judgment on any ground for which there is support in the record."). The objective duty-to-warn test under *Strasser* cannot apply differently between different Plaintiffs within cases "administered jointly as a single litigation." SA5. The decisions in *Burton I* and

*Allen* stand as law of the case for all Plaintiffs. *See Disimone v. Browner*, 121 F.3d 1262, 1266-67 (9th Cir. 1997) (applying law of the case across related cases).

## IV. Plaintiffs' duty-to-warn arguments are not before this Court.

Plaintiffs waived any argument that the District Court erred in holding that Defendants did not have a duty to warn in the 1990s and 2000s. *See* Opening Br. 45-54. Litigants who strategically choose to abandon claims by failing to appeal an adverse judgment waive those claims. *See United States v. Johns*, 686 F.3d 438, 449 (7th Cir. 2012); *cf. United States v. Peel*, 668 F.3d 506, 507 (7th Cir. 2012) ("When a case is remanded, an appeal taken from the judgment entered on remand is limited to issues that could not have been raised in the prior appeal."). Similarly, "arguments in opposition to summary judgment not properly raised in the district court are waived." *Manor Healthcare Corp. v. Guzzo*, 894 F.2d 919, 922 (7th Cir. 1990). "[W]aiver extinguishes error and precludes appellate review." *United States v. Flores*, 929 F.3d 443, 447 (7th Cir. 2019).

Accordingly, there is no question of duty before this Court. The First-Wave Plaintiffs chose not to cross-appeal the summary judgment dismissing their negligent failure-to-warn claims in *Burton I*. Those Plaintiffs abandoned their claims a second time when they voluntarily dismissed their most recent appeals. *See* Dec. 1, 2022 Order, Nos. 22-2628, 22-2629, & 22-2631. The Second-Wave Plaintiffs then waived any claim that Defendants had a duty to warn at the time of

Plaintiffs' alleged exposures by making the "strategic choice" not to oppose summary judgment on their negligent failure-to-warn claims.  SA17.  That precludes any challenge to the District Court's duty-to-warn holdings in the First- and Second-Wave cases.  *See Flores*, 929 F.3d at 447, 450; *Manor Healthcare*, 894 F.2d at 922.[12]

The District Court entered judgment against all other Plaintiffs based on issue preclusion, law of the case, or both.  Plaintiffs, therefore, cannot obtain reversal without showing that the District Court abused its discretion in applying those doctrines.  As set forth above, Plaintiffs cannot make that showing.  For that reason alone, this Court should affirm the judgments in full.

## V.    In all events, Defendants had no duty to warn.

Even if this Court were to disagree with the District Court's application of law of the case and issue preclusion, it still should affirm the judgments in full on other grounds.  *Samuelson*, 526 F.3d at 1051.  Every claim in this litigation requires that each Plaintiff prove Defendants owed a duty to warn in the 1990s and 2000s.  *Burton II*, 994 F.3d at 819-20, 823.  Applying well-settled Wisconsin law, the District

---

[12] "A strategic decision is, of course, an intentional one," and a party's "strategy" to raise one argument but omit others "is the very '[t]ouchstone of waiver,' as it indicates 'a knowing and intentional decision.'"  *Flores*, 929 F.3d at 448 (citations omitted).  The Second-Wave Plaintiffs' "motion for reconsideration does not save the issue for appeal."  *Manor*, 894 F.2d at 922 n.4; *see McGreal v. Village of Orland Park*, 928 F.3d 556, 559 (7th Cir. 2019); *Publishers Res., Inc. v. Walker-Davis Pubs., Inc.*, 762 F.2d 557, 561 (7th Cir. 1985).

Court held that Defendants had no such duty based on undisputed historical evidence common to all Plaintiffs. *Allen*, 527 F. Supp. 3d at 997; *Burton I*, 334 F. Supp. 3d at 961. That holding was correct as a matter of law and, under this Court's decision in *Burton II*, dispositive of all claims.

### A.    The District Court applied the correct legal standard.

Under Wisconsin law, whether a manufacturer has a duty to warn about the alleged danger of its product "is a question of law." *Schreiner v. Wieser Concrete Prods., Inc.*, 720 N.W.2d 525, 528 (Wis. Ct. App. 2006). As this Court recognized in *Burton II*, the Wisconsin Supreme Court set out the test for that question of law in *Strasser*, and that objective test asks whether a **manufacturer** had any "'reason to believe that those for whose use the chattel is supplied will realize its dangerous condition.'" 994 F.3d at 822 (quoting *Strasser*, 613 N.W.2d at 155); *see* WIS JI-Civil 3242, 3262 (pattern jury instructions for both strict-liability and negligence providing no duty to warn where "it can reasonably be assumed [by the manufacturer] that users will be familiar with" the dangerous condition).

Plaintiffs cannot dispute that *Strasser* governs the duty-to-warn analysis. As the District Court observed, Plaintiffs "do not dispute that I applied the correct legal standards in the original round of summary judgment [in *Burton I*]. Rather, they concede that, under Wisconsin law, a manufacturer has no duty to warn

about a danger if the defendant has reason to believe that the consumer will realize its dangerous condition."  SA57 (citing *Strasser*).

On appeal, Plaintiffs cite no Wisconsin authority suggesting that the District Court applied the wrong standard.  Instead, Plaintiffs misstate the test for duty to warn under Wisconsin law and conspicuously fail to cite the binding precedent (*Strasser* and its progeny) on which both this Court and the District Court relied. According to Plaintiffs, the existence of a duty to warn depends on the subjective knowledge of "consumers," and the judgments in these cases should be reversed because "consumers" in the 1990s and early 2000s were not "fully aware," "fully apprised," or "sufficiently aware."  Opening Br. 1, 4, 19, 46, 47, 51, 51-54.  They also refer to duty as a purported "question of fact," "issue of fact," and one that required a "finding of fact" below.  *Id*. 45, 47, 48.  Plaintiffs cite no Wisconsin authority supporting their incorrect legal analyses, and none exists.

## B.    The District Court relied on undisputed evidence.

The evidence that the District Court considered compelling under *Strasser* also is undisputed.  At summary judgment in *Burton I*, Plaintiffs did not contest that manufacturers had warned about the dangers of lead for decades, nor that "federal, state and local governments have warned of risks of lead in the homes since the 1970s," including risks associated with household dust.  *Burton I*, 334 F. Supp. 3d at 959, 961.  All of that evidence was—and remains—undisputed, and

62

that was the basis for the District Court's holding that manufacturers had "ample reason to believe" in the 1990s and 2000s that consumers were aware of the dangers of lead paint, including from household dust. *Id.*; *Allen*, 527 F. Supp. 3d at 997.[13]

The point is not controversial. As this Court recognized, by 1978 a consensus had developed about the risk of ingesting "paint flakes" and "scattered lead dust," leading "the federal government to ban lead-based paint for residential use." *Burton II*, 994 F.3d at 802. Similarly, the Supreme Court of Wisconsin has held that, "[b]y the mid-1980s," recognition of the risk from "ingestion of lead in chipped or flaked paint **or dust**" was "widespread," as were governmental "prevention and screening programs." *Peace v. Nw. Nat'l Ins. Co.*, 596 N.W.2d 429, 447 (Wis. 1999) (emphasis added); *see also Antwaun A. v. Heritage Mut. Ins. Co.*, 596 N.W.2d 456, 464 (Wis. 1999) ("[B]y 1989, the dangers of lead paint in residential housing was … extensively known.").

---

[13] Contrary to Plaintiffs' assertions, *Burton I* did not depend on concessions by the First-Wave Plaintiffs' caregivers that they knew the risks associated with lead paint. Opening Br. 10-11. The District Court based its no-duty holdings on *Strasser*'s manufacturer-centric analysis and the undisputed record of decades of warnings by paint manufacturers and federal, state, and local governments. *See, e.g.*, *Burton I*, 334 F. Supp. 3d at 961; *Allen*, 527 F. Supp. 3d at 997; *Burton* ECF 1066 at 5 n.3. In *Burton I*, the District Court also cited deposition testimony by certain witnesses as further, but not necessary, support because a plaintiff's knowledge of alleged dangers is an independent ground for precluding a failure-to-warn claim. *Strasser*, 613 N.W.2d at 155 (holding no duty to warn when "[plaintiff] knew everything that [defendant] could have told him").

**C.    Plaintiffs' arguments about lead dust are unavailing.**

After *Burton II*, Plaintiffs changed strategy and accused the District Court of "never consider[ing] the specific, hidden dangers presented by lead dust." Opening Br. 47; *see* DSA174 (calling the court's "prior analyses" of duty "incomplete"). They now argue that Defendants had a supposed duty to warn about the "specific danger of lead dust" that the District Court purportedly overlooked, not just a duty to warn about the "general toxicity of lead." Opening Br. 49. This argument fails for at least four independent reasons.

First, the District Court did not misunderstand Plaintiffs' claims and explicitly rejected their arguments to the contrary. Each complaint alleged potential exposure to WLCs from dust. *See, e.g.*, App-686 ¶ 170, App-701 ¶ 33. When Judge Adelman "previously determined" Defendants had no duty to warn about WLCs, that included holding there was no duty to warn about "the dangers of lead dust." SA17-18; *see also* SA16 ("[M]y original decision … was undoubtedly correct" because it addressed "ingestion of lead dust"); SA23 ("[M]y prior determination" was that Defendants "had no duty to warn … in the 1990s and later of the dangers of [WLCs], including the dangers of lead dust"). By the 1990s and 2000s, Defendants "had ample reason to believe that persons residing in homes with older paint would be aware of the toxicity of the lead compounds possibly in their paint, **and of the various mechanisms by which that lead might**

**be ingested**," and those "mechanisms … **include[d] ingestion of lead dust**."  SA16 (emphasis added).  The District Court "is in the best position to interpret" and "best knows the meaning of its own orders," and its interpretation rejecting Plaintiffs' argument warrants significant deference.  *Matter of Chicago, Rock Island & Pac. R. Co.*, 865 F.2d 807, 810 (7th Cir. 1988); *Southworth v. Bd. of Regents of Univ. of Wis. Sys.*, 376 F.3d 757, 766 (7th Cir. 2004) (this Court gives "broad deference … to a district court in its interpretation of its own orders").

Second, Plaintiffs' argument is contrary to Wisconsin law.  Even for consumer products that (unlike WLCs) are still being sold at the time of injury, Wisconsin does not impose a duty to warn about some "specific" subset of a product's "general" risk.  *See Kessel ex rel. Swenson v. Stansfield Vending, Inc.*, 714 N.W.2d 206, 213-14, 216 (Wis. Ct. App. 2006) (supplier of hot water dispenser had no duty to warn about all specific risk permutations of a known, general "dangerous condition"); *cf. McMahon v. Bunn-O-Matic Corp.*, 150 F.3d 651, 656 (7th Cir. 1998) (same under analogous Indiana law).  Plaintiffs cite no authority suggesting that Defendants had some distinct duty to warn about a "specific risk" of lead dust when they had no duty to warn about WLCs generally.[14]

---

[14]  The cases Plaintiffs cite concern only whether a given warning was adequate, not whether a duty existed in the first place.  *See* Opening Br. 50.

Third, Plaintiffs' new argument about a separate duty to warn about dust contradicts their prior position.   When first opposing summary judgment, Plaintiffs identified "the appropriate language" for lead warnings, and that language did not contain any warning about the specific risk of dust:

> **Do not apply on toys and other children's articles, furniture, or interior surfaces of any dwelling or facility which may be occupied or used by children.**
>
> **Do not apply on exterior surfaces of dwelling units, such as window sills, porches, stairs, or railings, to which children may be commonly exposed.**
>
> **Keep out of reach of children**

DSA70-72.  Plaintiffs asserted this language was sufficient to inform consumers about all risks from WLCs in paint.  *Id.*  Similarly, the Second-Wave Plaintiffs conceded that under the ruling in *Burton I* they did not have **any** surviving negligent failure-to-warn claims, related to lead dust or otherwise.  SA9.

Fourth, Plaintiffs' argument is belied by their own evidence, which further demonstrates why, according to the District Court, WLC manufacturers had "ample reason" in the 1990s and 2000s to believe that consumers were aware of the alleged dangers.  SA7.  For instance, Plaintiffs offered official public health statements by the Center for Disease Control from 1978 and 1985, which recommended that "Health Education" about lead paint should include "[b]asic preventative measures … such as regular sweeping and removal of accessible paint flakes and dust," and emphasized "[t]he danger of ingesting paint chips, dust, and soil."  App-1189, App-1246.  Likewise, Plaintiffs' expert historian

described the "considerable press coverage" about new lead-paint laws in the early 1990s, including "a Newsweek cover story in 1991." App-1039 & n.17. By the mid-1990s, federal law also required owners to provide explicit warnings to all potential lessees and buyers of pre-1978 housing that "[l]ead from paint chips, which you can see, and lead dust which you can't always see, can both be serious hazards," and that "Lead From Paint, Dust, and Soil Can Be Dangerous If Not Managed Properly." DSA233, DSA235 (EPA Pamphlet); *see also* DSA241 (Fact Sheet about EPA Pamphlet); 40 C.F.R. § 745.107(a)(1) (requiring distribution of EPA pamphlet). The record is filled with other undisputed examples of how "[f]ederal, state and local governments have warned of the risks of lead in the home since the 1970s," along with other media outlets. *Burton I*, 334 F. Supp. 3d at 959; *see, e.g.*, DSA210-11 (summarizing decades of government warnings and information campaigns regarding risks of lead dust); *see also, e.g.*, *Gibson* ECF 467-8 at 1, 7, 467-9 at 106, 111-13, 467-10 at 4, 467-11 at 2, 6, 12, 467-12 at 4, 9-10; *Allen* ECF 1112, 1130 (numerous government pamphlets and publications, news articles and television segments, and other information campaigns from the 1970s onward regarding risks from residential lead, including in household dust).

Plaintiffs spend pages describing evidence they proffered after the District Court reopened discovery. Opening Br. 51-54. But they never tie that evidence to the *Strasser* standard for duty to warn. Nor can they. Subjective evidence

"focusing on the … public's general understanding," Opening Br. 52, is irrelevant under the objective *Strasser* standard, which looks at what **manufacturers** had reason to believe. SA7. Indeed, the District Court ultimately held that it should not have reopened discovery at all. SA31 n.13. The threshold legal question of duty is one where law of the case and issue preclusion should apply, and no discovery could change the undisputed historical record that gave manufacturers ample reason to believe that by the time of Plaintiffs' alleged exposures, the dangers of lead paint—including in household dust—were known.

## VI. Plaintiffs' collateral attacks on *Burton II* are improper and incorrect.

Once the District Court declined to give Plaintiffs another bite at the apple to relitigate Defendants' duty to warn, *Burton II*—which held that the lack of a duty to warn in the 1990s and 2000s compels judgment on all claims—required granting summary judgment in full. 994 F.3d at 819-20, 822-23. That point is undisputed. Opening Br. 63 (acknowledging that *Burton II* "required" summary judgment). *Burton II* is binding law of the case, and the District Court did not err by following precedent. Plaintiffs now argue that *Burton II* was "erroneous." Opening Br. 63. But they cannot use this appeal to collaterally attack that decision. *Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*, 152 F.3d 588, 591 (7th Cir. 1998) (prior appeal "established the law of the case, binding the district judge on remand and us on this subsequent appeal"); *Hamer v. County of Lake*, 871 F.2d 58,

60 (7th Cir. 1989) ("[M]atters decided on appeal become the law of the case to be followed … on second appeal.").

Regardless, Plaintiffs misstate Wisconsin law. This Court correctly rejected the same arguments in *Burton II*. There is no basis for this Court to revisit its prior decision.

## A.    *Thomas* **did not grant any "right to a recovery."**

The bedrock of Plaintiffs' argument is the incorrect claim that *Thomas* created a "right to a recovery" in WLC cases. Opening Br. 6, 47. *Thomas* explicitly states otherwise, holding that it "does **not** guarantee the certainty of recovery." 701 N.W.2d at 554, 564 (emphasis added). Like these Plaintiffs, Steven Thomas claimed he had ingested WLCs from housepaint, but could not identify the specific manufacturer. *Thomas*, 701 N.W.2d at 528, 531. On appeal from a grant of summary judgment to defendants, plaintiff Thomas sought to extend to WLCs Wisconsin's "risk-contribution" doctrine, a narrow exception to the rule that the plaintiff must "identify the particular manufacturer of the product that caused the injury." *Godoy*, 768 N.W.2d at 682.

The doctrine shifts to each defendant the burden of proving that it did not manufacture the product that allegedly caused injury, but only if the plaintiff first proves the remaining traditional elements of a product-liability claim. A risk-contribution plaintiff still must prove, for example, that each defendant breached

a duty of care, that the product at issue was defective, and that WLCs caused the alleged injury. *Id.* at 564. Plaintiff Thomas himself did not obtain any recovery after failing to prove these elements. *Thomas*, 2010 WL 5117278, at *1 (affirming defense judgment).

This Court already rejected Plaintiffs' argument. In *Burton II*, the Court held that *Thomas* "modif[ied] ordinary causation principles" only to alter the manufacturer identification requirement. 994 F.3d at 821. But "the Wisconsin Supreme Court made clear that it was not reaching the merits of Thomas's claim," including the essential element of duty. *Id.* at 805-06; *see Thomas*, 701 N.W.2d at 528 n.2 ("[W]e do not address" whether Defendants had "a duty to warn."). The District Court was required to follow *Burton II*, and Plaintiffs present no basis to second-guess this Court's prior holding. Failure to prove a claim—including with respect to duty—precludes liability, even on risk-contribution claims.

**B.     No authority supports an "ordinary negligence" products claim.**

This Court's conclusion in *Burton II* that Wisconsin law "does not recognize a negligence claim absent a product defect" was grounded in binding Wisconsin Supreme Court precedent holding that in the product-liability context—including risk-contribution claims under *Thomas*—negligence actions "'require a plaintiff to prove that the product causing injury was "defective."'" *Burton II*, 994 F.3d at 817-20 (quoting *Godoy*, 768 N.W.2d at 681 n.7, and *Morden v. Cont'l AG*, 611 N.W.2d

70

659, 673 (Wis. 2000)).  Wisconsin law recognizes only "'three categories of product defects—manufacturing defects, design defects, and defects based on failure to adequately warn,'" so "a negligence claim must be predicated on one of those three categories of product defects."  *Burton II*, 994 F.3d at 818 (quoting *Godoy*, 768 N.W.2d at 683).[15]

Plaintiffs' argument that this Court erred in *Burton II* by holding that negligence requires a defect is bereft of any supporting Wisconsin precedent. Opening Br. 4, 20, 57-61.  Plaintiffs argue that *Thomas* "excluded" the defect requirement when listing the elements of a negligent risk-contribution claim, but this Court already found "no support for this argument in *Thomas*."  *Burton II*, 994 F.3d at 819 ("*Thomas* did not reach the merits" and "Thomas's claim **did** rely on a product defect—failure to warn.").  Plaintiffs also cite *Greiten* and *Sharp*.  Opening Br. 58-59 & n.35.  But as this Court recognized in *Burton II*, neither *Greiten* nor *Sharp* suggests that a manufacturer can be held negligent without proof of a defect. *Compare Burton II*, 994 F.3d at 818 (holding that both *Greiten* and *Sharp* require a product defect for negligence), *with* Opening Br. 58 (selectively quoting *Greiten* and *Sharp*).  As before, Plaintiffs cannot identify any Wisconsin case that supports their argument for product-liability negligence without defect.

---

[15] Plaintiffs' attempt to distinguish *Godoy* and *Morden* is the same argument they presented unsuccessfully in *Burton II*.  *Compare* Opening Br. 60 n.37, *with Burton II*, 994 F.3d at 818.

**C.     Plaintiffs assert an incorrect standard of duty.**

Plaintiffs next contend they did not have to establish that Defendants owed them any duty at all.  Instead, they claim that "Wisconsin law imposes a duty to warn purchasers at time of sale who can prevent harm to future users."  Opening Br. 4, 20-21, 61-63.  But Plaintiffs fail to cite a single Wisconsin case supporting that absolute claim.  According to Plaintiffs, it is "black-letter Wisconsin law" that "'everyone owes to the world at large'" a duty of ordinary care.  Opening Br. 61 (quoting *Brenner v. Amerisure Mut. Ins. Co.*, 893 N.W.2d 193, 198-99 (Wis. 2017)).  But *Brenner* rejected that exact formulation as "over-simplif[ied]."  *Brenner*, 893 N.W.2d at 198-99.  *Brenner* held that duty-to-warn is a "question[] of law" that "depends on the circumstances" and the underlying claim.  *Id.* at 198-99.  *Brenner* affirmed judgment for the defendant, because it owed no relevant duty to the plaintiff.  *Id.* at 211.

Plaintiffs also ignore the express language of *Thomas* and other controlling decisions by the Wisconsin Supreme Court.  As the District Court noted in *Burton I*, "the negligence claim outlined in *Thomas* required proof that 'the Pigment Manufacturer's conduct in producing or marketing the white lead carbonate constituted a breach of a legally recognized duty **to Thomas**.' … Thus the duty that must be established is necessarily a duty to the plaintiff."  334 F. Supp. 3d at 958 (emphasis in original, citation omitted); *see Hocking v. City of Dodgeville*, 768

N.W.2d 552, 556 (Wis. 2009) (duty must be "restricted to what is reasonable under the circumstances," so "Wisconsin courts have in the past precluded negligence actions because a defendant did not owe a duty **to the plaintiff** under the circumstances." (emphasis added)).[16]

### D.    Plaintiffs misstate Wisconsin strict-liability principles.

*Burton II* also rejected Plaintiffs' argument that their strict-liability claims "must be judged based on consumer knowledge in the first half of the century." Opening Br. 20, 55.  This Court held that the relevant time period is when Plaintiffs were allegedly exposed to WLCs in the 1990s and 2000s, relying on multiple Wisconsin Supreme Court decisions and the Restatement (Second) of Torts § 402A. *Burton*, 994 F.3d at 823.  Strict liability under Section 402A focuses on the "ultimate consumer," and does not permit Plaintiffs to litigate their claims by ignoring their own circumstances in favor of those surrounding the "broad and amorphous category of individuals" who might have ingested WLCs decades before Plaintiffs were born.  *Burton II*, 994 F.3d at 823.

---

[16] None of the cases that Plaintiffs cite support their argument.  Opening Br. 61-63. Each was either decided decades before *Strasser*, is from a lower court, is not a products case, and/or was explicitly considered and distinguished by *Brenner* when that case rejected Plaintiffs' overbroad formulation of duty.  *See* 893 N.W.2d at 198-99.  Plaintiffs also acknowledge that Wisconsin does not impose on manufacturers any "continuing duty to warn … downstream users of [their] products," Opening Br. 63, but overlook that Defendants had all stopped manufacturing WLCs decades before Plaintiffs' alleged exposures.  *Burton II*, 994 F.3d at 808.

Plaintiffs ignore this Court's reasoning and cite no relevant authority contradicting *Burton II*. They contend that "the *Burton* panel's conclusion was contrary to established Wisconsin law." Opening Br. 55-56 (citing *Horst v. Deere & Co.*, 769 N.W.2d 536 (Wis. 2009), and *Murphy v. Columbus McKinnon Corp.*, 963 N.W.2d 837 (Wis. Ct. App. 2021)). But Plaintiffs' cited cases uniformly affirm Section 402A's emphasis on the "ultimate consumer." None would shift the focus away from "those who consumed residential paint when the plaintiffs (or their caregivers) did." *Burton II*, 994 F.3d at 823. Plaintiffs also highlight the "consumer contemplation" standard, Opening Br. 55-57, but that test assesses whether a product is "unreasonably dangerous," which is a separate element of strict liability distinct from defect. *Horst*, 769 N.W.2d at 538; *Thomas*, 701 N.W.2d at 564 (listing defect and unreasonable danger as separate elements of a strict-liability claim). *Burton II* correctly analyzed the duty element of Plaintiffs' strict-liability claims.

### E.   Plaintiffs waived any request for extraordinary review and cannot meet the requirements for certification or hearing en banc.

Plaintiffs acknowledge that the judgments below were "mandated by this Court's *Burton* decision." Opening Br. 63. The District Court did not commit reversible error by following binding precedent. *Marshfield Clinic*, 152 F.3d at 591. So Plaintiffs say they might, "at an appropriate time," ask the Court to hear this appeal en banc or certify "the issues … discussed" in Section III of their brief to the

Supreme Court of Wisconsin. *Id.* at 63-64. The Court should not entertain either possibility.[17]

First, Plaintiffs have not made any timely request for certification. "A motion for certification shall be included in the moving party's brief." Cir. Rule 52(a). The "appropriate time" for any such motion—indeed, the required time—was therefore December 9, 2022, the due date for Plaintiffs' opening brief. In addition, the request for certification should be stated clearly "on the cover of the brief," and set forth "immediately after the jurisdictional statement." Seventh Circuit Handbook § XXV. Plaintiffs complied with none of those requirements.[18]

Second, Plaintiffs cannot meet the substantive requirements for either certification or hearing en banc. This Court would have to first hold that there is a controlling issue under the law of Wisconsin. Wis. Stat. § 821.01. But this appeal addresses only whether the District Court (i) correctly denied reconsideration, (ii) correctly applied law of the case, and (iii) correctly applied issue preclusion. The first two—reconsideration and law of the case—are federal-law questions subject to the District Court's discretion. And Plaintiffs evidently want

---

[17] Plaintiffs suggest they might seek certification or en banc review, but have not yet done so. Defendants reserve their right to respond to any motion or portion of a brief seeking such certification or en banc review. *E.g.*, Fed. R. App. P. 27(a)(3).

[18] Similarly, a "petition that an appeal be heard initially en banc must be filed by the date when the appellee's brief is due." Fed. R. App. P. 35(c).

certification of only "issues … discussed" in Section III of their brief, which does not address issue preclusion or any other issue governing this appeal. Opening Br. 63. There is no controlling question of state law for certification, and no question "of exceptional importance" for en banc review. Fed. R. App. P. 35(a).

Third, certification is separately improper because Plaintiffs cannot show that "there is no controlling precedent in the decisions of the supreme court and the court of appeals of this state" for any of the issues discussed anywhere in their brief. Wis. Stat. § 821.01. Clear precedent from the Wisconsin courts guided both the negligent duty-to-warn analysis in *Burton I*, and the holdings in *Burton II*. That Plaintiffs never cite the Wisconsin Supreme Court's decision in *Strasser* demonstrates there is no legitimate controversy of state law appropriate for certification. *See State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 671 (7th Cir. 2001) (this Court should be "**genuinely uncertain** about a question of state law that is **vital** to a correct disposition of the case" before considering certification (emphasis added)); *cf. LTV Steel Co. v. Nw. Eng'g & Const., Inc.*, 41 F.3d 332, 338 (7th Cir. 1994) (rejecting certification because "we find sufficient guidance in the decisions of the Indiana Court of Appeals to decide this case without subjecting the parties to the additional delay and expense inherent in certifying a question to the Indiana Supreme Court").

Fourth, both this Court and the Supreme Court of Wisconsin already held that nothing here warrants extraordinary review. After the panel in *Burton II* issued its decision, the First-Wave Plaintiffs petitioned for rehearing or, in the alternative, certification of many of the same issues discussed in Section III of their opening brief here. *See* Apr. 29, 2021 Petition at 11, No. 20-1774 (7th Cir.). No judge in regular service called for a vote, and the Court denied certification. *See* May 12, 2021 Order, No. 20-1774 (7th Cir.).

Plaintiffs also recently filed a petition asking the Supreme Court of Wisconsin to assert original jurisdiction over the same duty and negligence issues they have improperly asked this Court to address. The Supreme Court of Wisconsin denied review. *See* Oct. 11, 2022 Order, No. 2022AP797-OA (Wis.). *Cf. Circle Block Partners, LLC v. Fireman's Fund Ins. Co.*, 44 F.4th 1014, 1024 (7th Cir. 2022) (denying certification where state supreme court recently declined to address such issues); *State Farm*, 275 F.3d at 671 (same).

*Thomas* relaxed manufacturer-identification requirements, but preserved without deciding all other duty and causation requirements of Plaintiffs' claims. Once binding principles of Wisconsin law were applied to the undisputed facts in this litigation, Defendants did not have a duty to warn at the time of Plaintiffs' alleged exposures—a point that Plaintiffs previously did not dispute. The District Court properly applied that holding to all cases through ordinary principles of

issue preclusion and law of the case. Nothing about the judgments below warrants

certification or hearing en banc.

### CONCLUSION

For the foregoing reasons, the Court should affirm the judgments in full.


Respectfully submitted,                        Dated: February 22, 2023

 /s/ *Leon F. DeJulius, Jr.*                      /s/ *Brian D. Schmalzbach*
Leon F. DeJulius, Jr.                          Brian D. Schmalzbach
JONES DAY                                       Joy C. Fuhr
250 Vesey Street                                Eric Fleming
New York, NY 10281-1047                         MCGUIREWOODS LLP
Ph: (212) 326-3830                              800 East Canal Street
                                                Richmond, VA 23219-3916
Anderson T. Bailey                              Ph: (804) 775-1000
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219                            Paul E. Benson
Ph: (412) 391-3939                              MICHAEL BEST & FRIEDRICH LLP
                                                790 North Water Street, Suite 2500
*Counsel for Appellee*                          Milwaukee, WI 53202
*The Sherwin-Williams Company*                  Ph: (414) 271-6560


                                                *Counsel for Appellee EIDP, Inc.*

Jeffrey K. Spoerk                                /s/ *Sean Morris*
Evan Thomsen                                    Sean Morris
QUARLES & BRADY LLP                             ARNOLD & PORTER KAYE SCHOLER LLP
411 E Wisconsin Avenue, Suite 2350             777 South Figueroa Street, 44th Floor
Milwaukee, WI 53202                             Los Angeles, CA 90017-5844
Ph: (414) 277-5000                              Ph: (213) 243-4000


*Counsel for Appellee*                          *Counsel for Appellee Atlantic Richfield*
*The Sherwin-Williams Company*                  *Company*


78

  /s/ *Robert P. Alpert*
Robert P. Alpert
Jeffrey K. Douglass
Eric Larson
MORRIS, MANNING & MARTIN, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, GA 30326
Ph: (404) 233-7000

Timothy A. Bascom
BASCOM, BUDISH & CEMAN, S.C.
W193 N10975 Kleinmann Drive
Germantown, WI 53022
Ph: (414) 774-8835

*Counsel for Appellee Armstrong
Containers, Inc.*

Anthony S. Baish
GODFREY & KAHN, S.C.
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202-5 6 I 5
Ph : (414) 273-3500

*Counsel for Appellee Atlantic Richfield
Company*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned hereby certifies that this brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) and Circuit Rule 32 as follows:

1.     Exclusive of the exempted portions of the brief, as provided in Circuit Rule 32(c) and this Court's order of December 22, 2022, this brief contains 17,795 words.  As permitted by Federal Rule of Appellate Procedure 32(g)(1), the undersigned has relied in preparing this certificate on the word-count feature of the word-processing system used to prepare this brief.

2.     This brief has been prepared in proportionally spaced typeface using Microsoft® Word for Microsoft 365 MSO in 13-point Book Antiqua font, as permitted by Circuit Rule 32(b).

/s/  *Leon F. DeJulius, Jr.*
Leon F. DeJulius, Jr.
*Counsel for Defendant-Appellee*
*The Sherwin-Williams Company*

**CERTIFICATE OF SERVICE**

I certify that on February 22, 2023, this Response Brief of Defendants-Appellees Armstrong, Atlantic Richfield, DuPont, and Sherwin-Williams was filed with the Clerk of the United States Court of Appeals for the Seventh Circuit using the appellate CM/ECF system, which will also serve all counsel of record.

 /s/ *Leon F. DeJulius, Jr.*
Leon F. DeJulius, Jr.
*Counsel for Defendant-Appellee*
*The Sherwin-Williams Company*